ANSON B. JENKS *et al.*

*v.*

HUNTINGTON W. JACKSON *et al.*

*Filed at Ottawa January 25, 1889.*

1. WILLS—*rules of construction.* The rule which controls all others in the interpretation of wills is, that the intention of the testator, to be gathered from the entire will, must govern. Such intention is not to be ascertained from any particular word or expression used in the will, but is to be collected from all the words and all the provisions as a .whole. At the same time, if it is possible, full effect must be given .to every word and every clause of the will.

2. SAME—*construction in case of inconsistent provisions.* The rejection of one clause in a will to uphold another is a desperate remedy, to

be resorted to only in cases of necessity. While, when two clauses are inconsistent and irreconcilable, the last must prevail, yet the later clause, if such construction can be fairly given it, should be deemed to affirm, and not to contradict, the earlier clause.

3. SAME—*sense in which words are used from context.* While the general rule is, that words used in one part of a will must be understood in the same sense when used elsewhere in the same instrument, yet when there is something in the context which makes a different meaning imperative, as that otherwise the actual intention of the testator will be defeated, or a prior provision, expressed in clear and decisive terms, may be rendered inoperative, the court will presume such words were used in different senses, when such different senses are not strained or unnatural, do no violence to the language used, lead to a reasonable conclusion, and harmonize otherwise inconsistent provisions.

4. SAME—*whether devise is to trustee for a devisee.* A testatrix devised her estate to A, B and C, her three grandchildren, in equal shares, the part to C to be vested in a trustee, for him. She also devised her late husband's estate, under a power given to her, to D, the father of the three children, in trust for them, with power to divide and make sale of the last named estate, and appointed E as trustee in respect of the share allotted to C: *Held,* that the share of C in the testatrix's own estate, as well as in that devised under the power, was vested in E, in trust for C.

5. SAME—*what trusts created by a devise—double trust.* A testatrix, under a power of disposition by will, devised all the property and estate covered by the power to D, in trust for A, B and C, in equal shares, and directed that the share of A should be "held in trust for her, as aforesaid," so that the net annual income thereof should be paid to her during her life, free from the control of her husband, and that on her death the full legal title to the share allotted to her should vest in her heirs other than her husband, and the trustee was given power to divide such estate, and to make sale of the same: *Held,* that two distinct trusts were thereby created, the first for all three of the beneficiaries, A, B and C, and the second for A, only, which was to continue for her life. The first trust covered all the property devised under the power, while the latter merely embraced the share allotted to A.

6. SAME—*power of sale, when applies to two trusts created.* The will also provided that "the trustee * * * under this item of my will, shall have power to make division of the property covered by the same, to receive interest, income, rents and profits, to pay taxes and all other charges thereon, make repairs and improvements, sell and convey, and do all other acts which may be necessary and proper to fully execute the trust reposed in him :" *Held,* that the powers were not conferred on the trustee under one of the trusts, but applied to both the trusts, so far as they were applicable to both, or either.

7. SAME—*from what time the will speaks—and estate devised vests.* A testatrix devised all her own property to A, B and C, her grandchildren, the share of C "to be vested in a trustee for him." Under a power of disposition, she also devised her late husband's estate to D, in trust for the same persons, directing that the "share or shares" of C should "go to and be vested in a trustee," for his benefit, and appointed E such trustee : *Held,* that°the will, as to the devise of the testatrix' own property, spoke from her death, and vested C's share in her estate in E on her death, but not his share in the property devised under the power, which did not vest in E until C's share was allotted by D. The first undivided share vested immediately in E, in trust, but the other share vested only when the division of the estate devised under the power was made and the respective shares of the several children were ascertained and set apart.

8. SAME—*power of sale by trustee.* A testator may devise his estate to a trustee in trust, for the benefit of named beneficiaries, to be divided between them by such trustee, and provide that on a division the share of one of the *cestuis que trust* shall be vested in another trustee, and give a power of sale to each trustee while he holds the legal title. A power of sale in the first trustee while holding the whole of the property, is not inconsistent with a like power of sale in the second trustee, in respect to the property vested in him.

9. SAME—*power of sale in trustee—whether limited to certain purposes.* An estate was devised to a trustee in trust for three grandchildren of the testatrix, children of the trustee, giving the latter power "to make division of the property, to receive the interest, income, rents and profits thereof, to pay taxes and all other charges thereon, make repairs and improvements, sell and convey, and to do all other acts" necessary and proper to fully execute the trust : *Held,* that the power given to sell and convey was not confined to sales and conveyances to enable the trustee to make a division or partition, but that he might sell and convey for the purpose of making repairs or improvements upon the unsold portion of the estate, and also for the purpose of paying taxes and other charges thereon, and that a sale by him would pass the title to the purchaser.

APPEAL from the Superior Court of Cook county; the Hon. GWYNN GARNETT, Judge, presiding.

The second, fourth and fifth items of the will of Jerusha Maxwell, deceased, are as follows :

"*Item 2d*—Subject to the above, I devise and bequeath all my property and estate whatsoever, which may belong to me

in my own right, at my decease, to the children of Ophelia, the late wife of Joel C. Walter, in equal shares,—the share of Charles Joel to be vested in a trustee for him, as hereinafter provided. If any of said children should die before me, leaving issue living at my death, such issue to take the same share their parent would if living.

"*Item 4th*—Since by the will of my late husband, Dr. Philip Maxwell, power is given to me to devise and bequeath all his property, except as in his said will is excepted, now I do hereby, in execution of the said power, devise and bequeath all the property and estate whatsoever, covered by the said power, to Joel C. Walter, and upon his death to the executors and trustees of his last will and testament, in trust for the children of Ophelia, the late wife of the said Joel C. Walter, in equal shares. In case of the death of any of said children before me, leaving issue living at my death, such issue to take the same share as their parent would hereunder, if living. The share allotted to Ida Ophelia Walter, the only daughter of the said Ophelia now surviving her, in case she survives me, shall be held in trust for her as aforesaid, so that after her arrival at lawful age the net annual income thereof shall be paid, in regular quarterly payments, into her own hands and upon her own receipt solely, and without the power, on her part, to anticipate such payments, the same to be so paid to her during her life, and to be received, held and enjoyed by her free and clear from any husband she may have, and to her sole and separate use, and upon her death, the full legal title to the share so allotted to her, or for her benefit, as aforesaid, shall at once vest in her heirs-at-law other than her husband. The trustee and trustees under this item of my will shall have power to make division of the property covered by the same, to receive the interest, income, rents and profits thereof, to pay taxes and all other charges thereon, make repairs and improvements, sell and convey, and do all other acts which may

be necessary and proper to fully execute the trust reposed in him and them, respectively.

"*Item 5th*—As Charles Joel Walter has shown indications of not being in his right mind, I will and direct that his entire share or shares under my will shall go to and be vested in a trustee, who shall see that the said Charles Joel is properly maintained and amply provided for out of the said property held hereunder by said trustee, he using such an amount for that purpose as in his discretion shall seem best, with power in the said trustee to sell and convey any property belonging to the share of the said Charles Joel, when, in his discretion, it shall appear necessary and proper so to do; and said trustee shall convey, transfer and deliver over to the said Charles Joel his said share, when said trustee shall be satisfied that the said Charles Joel is competent to take care of the same, and not before, unless Joel C. Walter, father of the said Charles Joel, shall direct said trustee so to do. And the said Charles Joel is to have no power to control, dispose of, or incumber the said share allotted to him, by any act done or suffered by him, until the same shall have been actually conveyed to him by the said trustee. In case of the death of the said Charles Joel before the property covered by this item is turned over to him by said trustee, the legal title thereof shall vest absolutely in his heirs-at-law. I nominate and appoint Alonzo J. Willard to be the trustee under this item of my will, in respect of the share allotted to the benefit of the said Charles Joel. In case of his death or his refusal to accept of such trust, then, in default of further appointment by me, the executors and trustees under the will of his father, Joel C. Walter, or such other person or persons as the said Joel C. Walter shall by deed or will appoint, shall be such trustee."

The children of Ophelia Walter, wife of Joel C. Walter, were Charles Joel, Philip E. and Ida Ophelia Walter. Ophelia Walter was the daughter of the testatrix.

Mr. H. S. Monroe, and Mr. A. B. Jenks, for the appellants:

The only trust intended was to divide the lands, and hold that intended for Ida Ophelia, as directed. After the division, Joel C. Walter was the mere naked trustee of the parts belonging to Charles Joel and Philip E., and the title would have at once vested in them. Rev. Stat. chap. 3, sec. 3; *Kirkland* v. *Cox*, 94 Ill. 400; *Witham* v. *Brooner*, 63 id. 344; *Kellogg* v. *Hale*, 108 id. 164.

The power of sale was given solely for the purpose of division of the estate, and not to enable the trustee to convert the land into money. 2 Perry on Trusts, 769.

It was his duty to divide the property immediately. *Walker* v. *Shaw*, 19 Ves. 391; *Hawkins* v. *Chapel*, 1 Atk. 623.

There was no power, as executor of the will, to sell. *Marshall* v. *Rose*, 86 Ill. 374; *LeMoyne* v. *Quimby*, 70 id. 399; Schouler on Executors and Administrators, secs. 212, 213; Rev. Stat. chap. 2, secs. 99-101.

In the construction of wills, full effect should be given, not only to each item, but to every clause and word of each item. 3 Jarman on Wills, 705, 706.

In the second item the testatrix speaks of the portion owned by her, in her own right, going to Charles Joel as his share. She uses that word in the same way in the fourth item. In her mind there are these two shares going to Charles Joel, and only these. Under all rules of construction, the same meaning must be given to the word "share," in this clause as in the foregoing, unless there is good reason to the contrary. 3 Jarman on Wills, 707.

All parts of a will are to be construed in relation to each other, so as, if possible, to make a consistent whole. 3 Jarman on Wills, 705; *Welch* v. *Savings Bank*, 74 Ill. 171; *Banks* v. *Jones*, 60 Ala. 605; *Minnons* v. *Westfall*, 33 Ohio St. 213.

When two clauses of a will are irreconcilable, on the theory of appellees the last must prevail. 9 Mod. 154; 6 Ves. 100; 2 Wm. Black, 976; 3 M. & E. 158; 1 T. R. 630; 1 Sw. 28;

2 Atk. 372; 6 T. R. 814; 2 Taunt. 109; 18 Ves. 421; 6 More, 214; *Murfitt* v. *Jessop,* 94 Ill. 158; *Brownfield* v. *Wilson,* 78 id. 467.

The court will always look at and consider the circumstances under which the testator makes his will, as, the state of his family, their relations to each other and to the testator, the state of his property, and the like. 3 Jarman on Wills, 705, 706.

As to his property, see 1 Mer. 646; 7 Taunt. 105; 1 B. & A. 550; 3 B. & C. 870.

As to state of family, see 3 B. P. C. John. 257; 4 Burr, 216; 4 B. P. C. 441; 3 B. & A. 657; 1 Jarman on Wills, 734, note 9.

Messrs. Lyman & Jackson, for the appellees:

By the will of Jerusha Maxwell, Joel C. Walter, the trustee and executor under her will, had power to sell and convey the property in question. His deed conveyed the title to appellees. *Hamilton* v. *Hamilton,* 98 Ill. 258; *Wicker* v. *Ray,* 118 id. 472.

It is a well settled rule of construction that all the provisions of a will should be given effect if a construction can be adopted which reconciles and gives effect to all its provisions. *Dawes* v. *Swan,* 4 Mass. 208; Schouler on Wills, secs. 437, 438; *Dill* v. *Dill,* 1 Des. 237; *Mutter's Estate,* 38 Pa. 314; *Banta* v. *Boyd,* 118 Ill. 186; *Dalton* v. *Scales,* 2 Ired. Eq. 521; *Brownfield* v. *Wilson,* 78 Ill. 467.

The paramount rule of construction in construing wills is, to give effect to the intention of the testator. Schouler on Wills, sec. 476; *Stinson* v. *Vroman,* 99 N. Y. 74; *Hitchcock* v. *Hitchcock,* 35 Pa. St. 393; *Wickman* v. *Samson,* 5 Hare, 91.

The rule of construction is, that a later clause in a will must be deemed to affirm, not to contradict, an earlier clause, if such construction can fairly be given. The effort, and a natural one, is to reconcile and make the disposition a consistent whole, for, in construing doubtful language, that inter-

pretation should be preferred which gives consistency to the whole will, rather than that which works inconsistency. *Roseboom* v. *Roseboom,* 81 N. Y. 356; Schouler on Wills, sec. 474; 2 Jarman on Wills, 843; *Temple* v. *Sammis,* 97 N. Y. 529; *Trustees* v. *Kellogg,* 16 id. 83; *Thornhill* v. *Hall,* 2 C. & F. 22; *Mason* v. *Ely,* 38 Ill. 138.

The power to sell and convey was given, not as a means of division, but it was intended to be exercised whenever, in the judgment and discretion of the trustee, it was for the benefit of the estate. *Hamilton* v. *Hamilton,* 98 Ill. 258; *Wicker* v. *Ray,* 118 id. 476.

It is not necessary that there should be a specific authority given to the trustee to enable him to sell. If a sale is necessary to the due execution of the trust, it will always be inferred that the testator means to give to the person directed or employed every authority which is necessary for his declared purpose. Hill on Trustees, 733, note 2; 2 Spence's Eq. Jur. 366; *Going* v. *Emery,* 16 Pick. 111.

Thus, where there is a direction to divide and pay over the shares to legatees, where a literal division is impracticable, implies a power to sell for the purpose. *Winston* v. *Jones,* 6 Ala. 550.

No precise form of words is necessary. It is sufficient that an intention to give the power is shown. Hill on Trustees, 733.

When a testator devises property in trust, to a trustee, with full and plenary powers, the legal title passes to the trustee with full power of sale, and the *cestui que trust* will take only an equitable estate. 1 Lewin on Trusts, 219; *Watson* v. *Pearson,* 2 Exch. 593.

Where a will contains any direction in regard to the disposition of real estate, or, indeed, any other provision which can not reasonably be carried into effect without the sale of the real estate, a power to do that is implied. *Gosling* v. *Carter,* 1 Coll. C. C. 644; *Bentham* v. *Wiltshire,* 4 Mad. 44; 3 Redfield on Wills, 138; Williams on Executors, (Am. ed.) 725.

Mr. JUSTICE BAKER delivered the opinion of the Court:

This is a bill for partition, exhibited in the Superior Court of Cook county, by Anson B. Jenks, claiming to be the owner, as trustee, of the legal title in fee of an undivided third of certain lands lying near the town of Pullman, and by Charles Joel Walter, his *cestui que trust*, claiming the equitable title in fee of said third interest in said lands. The defendants in the bill are Huntington W. Jackson and David R. Lyman, who are in possession and claim title as owners in fee of the whole of said lands under the wills of Dr. Philip Maxwell, deceased, and of his widow, Jerusha Maxwell, deceased, by virtue of a sale and conveyance by Joel C. Walter, executor and trustee under the will of said Jerusha Maxwell, to one E. Kellogg Beach, and *mesne* conveyances from said Beach to them.

The lands in question were patented by the United States to said Dr. Philip Maxwell, who died in 1859, having devised his entire estate, real and personal, to said Jerusha Maxwell, for life, with power in her to devise and dispose of the same by her last will and testament. In November, 1870, said Jerusha Maxwell made her last will and testament. At that time she owned a considerable amount of personal property in her own right, but subsequently, in the great fire of 1871, the building on the premises known as No. 79 Clark street, Chicago, which was a part of the property covered by the power in her husband's will, was destroyed, and in rebuilding, she expended some $15,000 of her separate property, and likewise became indebted to her son-in-law, Joel C. Walter, in about $29,000, for advances. At the time of her death, in 1875, she left about $30,000 in personal property, and the real estate which was the subject of the power in her husband's will, and consisted principally of unimproved lands, was of the value of about $175,000, but it was incumbered with back taxes, which were liens upon it, to the amount of something over $6000.

The first item of the will of said Jerusha Maxwell merely made provision for several comparatively small bequests of

money.　The present controversy turns upon the construction to be given to the second, fourth and fifth items of said will.

The cause was heard in the Superior Court upon bill, answer, replication and proofs, and the court found the issues for the defendants, and dismissed the bill for want of equity.　From the decree dismissing the bill, the complainants therein prosecute this appeal.

The contention of appellants is, that under the will of Jerusha Maxwell, the title to one-third of said lands sought to be partitioned, vested in Alonzo J. Willard, trustee for Charles Joel Walter, and passed to Anson B. Jenks, his successor in trust, and that said Jenks, as trustee, is now the owner of the same.　The contention of appellees is, that by said will said lands were devised to Joel C. Walter, as trustee, with power to sell and convey the same, and that he exercised such power by the sale and conveyance to Beach, from whom, by *mesne* conveyances, they acquired title.

The rule which controls all others in the interpretation of wills is, that the intention of the testator or testatrix, to be gathered from the entire will, must govern.　Such intention is not to be ascertained from any particular word or expression used in the instrument, but is to be collected from all the words and all the provisions considered as a whole.　At the same time, if it is possible, full effect must be given to every word and every clause of the will.　The rejection of one clause to uphold another is a desperate remedy, to be resorted to only in case of necessity.　While, where two clauses are diametrically opposed to each other and are wholly irreconcilable, the later must prevail, on the presumption it was intended to modify or abrogate the former provision, yet such later clause, if such a construction can fairly be given it, should be deemed to affirm, and not to contradict, the earlier clause.　So, also, while the general rule is, that words used in one part of a will must be understood in the same sense when used elsewhere in the same instrument, yet where there is something in the context which

makes a different meaning imperative, as that otherwise the actual intention of the testator or testatrix would be defeated, or a prior provision expressed in clear and decisive terms would be rendered inoperative, the courts will presume such words were used in different senses, when such different senses are not strained or unnatural, do no violence to the language used, lead to a reasonable conclusion, and harmonize otherwise inconsistent provisions.

There are, so to speak, four trusts created by this will in respect to property. There were three surviving children of Ophelia, the late wife of Joel C. Walter, and they were Philip E. Walter, Ida Ophelia Walter and Charles Joel Walter; and by item 2 of her will the testatrix devised and bequeathed all her property and estate which belonged to her in her own right, to said children, in equal shares. The shares of the two first mentioned children in such property were given directly to them, but in regard to the share of Charles Joel Walter therein, it was directed that it should "be vested in a trustee for him, as hereinafter provided." The reference here, and that, too, in connection with the disposition to be made of the share of Charles Joel in the separate property of the testatrix, is to item 5 of the will, and on turning to said item 5, it is seen that it is recited therein that said Charles Joel Walter "has shown indications of not being in his right mind," and provision made that his "entire share or shares, under the will, shall go to and be vested in a trustee," and that Alonzo J. Willard is nominated and appointed to be such trustee. Whatever may be the other trusts created by the will, there can be no question but that said items 2 and 5, taken and considered together, show that it was the intention of the testatrix that a share in the property owned by her in her own right should vest in said Willard, in trust for said Charles Joel Walter.

Item 4 of the will contains three distinct clauses or provisions. The first of these clauses creates what may, for con-

venience, be designated the second trust of the will, and in which trust all three of the children of Ophelia, late wife of said Joel C. Walter,—*i. e.*, Philip E., Ida Ophelia and Charles Joel Walter,—are *cestuis que trust;* and the second of said clauses creates what may be denominated the third trust, it being a trust for the benefit of said Ida Ophelia Walter, only. The first clause or provision of said item 4 refers to the power donated by the will of the deceased husband of the testatrix, and in execution of said power, devises and bequeathes all the property and estate whatsoever, covered by the said power, to Joel C. Walter, in trust for the children of Ophelia, his late wife, in equal shares. The second clause of the same item provides that the share "allotted" to Ida Ophelia Walter shall be held in trust for her "as aforesaid," so that after her arrival at lawful age the net annual income "thereof" shall be paid to her during her life, and that upon her death the full legal title to the share so allotted to her or for her benefit, "as aforesaid," shall at once vest in her heirs-at-law other than her husband. Both of the trusts created by this "item 4" are in the property and estate held by the testatrix under the power. One of them is for the benefit of all three of the children, and the other for the individual benefit of Ida Ophelia. Joel C. Walter is designated as the trustee in respect to both of these trusts,—in respect to the first, in express words and by language which is specific in its terms; in respect to the trust for the benefit of Ida Ophelia, by the repeated use of the words "as aforesaid," in the particular connections in which they are found. It is plain, also, that the first of the trusts reposed in him includes all the property and estate under the power, and that the other of said trusts merely covers such portion of said property and estate as may be "allotted" to said Ida Ophelia as "her share."

The third clause or provision of said item 4 is: "The trustee * * * under this item of my will shall have power to make division of the property covered by the same, to receive the

interest, income, rents and profits thereof, to pay taxes and all other charges thereon, make repairs and improvements, sell and convey, and do all other acts which may be necessary and proper to fully execute the trust reposed in him." This third clause is to be read in connection with and as having application to both the other provisions or clauses of item 4, and as bearing upon the powers conferred by the will upon the trustee in respect to both of the trusts created by the item. Its language is, "the trustee * * * under this item of my will." Who is the trustee under said item? Plainly, Joel C. Walter. He is the only trustee named in said item. But he is nominated trustee in respect to two distinct trusts, both trusts being provided for in the same item. The clause does not, in terms, designate with reference to which of the trusts mentioned in the item the powers enumerated therein are given. In fact, they are conferred upon him as "trustee" "under this item." In other words, they are not confined to his trusteeship under the one trust or the other, but are to be held donated to him as trustee under each and both of the trusts, so far as they are capable of application to both or either. Very evidently these powers were not donated to him solely as trustee of the share allotted to Ida Ophelia, for the "power to make division of the property covered by the item" there would be no occasion or opportunity to invoke in the execution of the provisions of the will in respect to said share, after it was once set apart to her, and, manifestly, said power was intended for the purpose of enabling the trustee to make division of all the property and estate, under the power in the will of Dr. Maxwell, among the beneficiaries designated in the will of his widow. If the powers enumerated in item 4 are to be restricted to one, only, of the trusts under said item, then it is plain they must be confined to the trust which has for its subject the whole of the property and estate. But we are inclined to the opinion, that while the power to make division was designed to and only could apply to the trust cover-

ing the whole property, yet that the other enumerated powers were donated in respect to both of the trusts. The phraseology of this third clause of the item, as well as the general scope and intention of the will, seems to indicate this. The trustee or trustees of the allotted share of Ida Ophelia would be a trustee or trustees under "this item,"—the 4th,—of the will. "The property covered by the same" (item) would include said share as well as the whole property. The subsequent words, "thereof" and "thereon," refer to the property covered by the item,—*i. e.*, both all the property devised and bequeathed to Joel C. Walter and the allotted share of Ida Ophelia, and in the concluding words of the sentence the reference is to other acts in execution of "the trusts" reposed, (not the *trust* reposed,) thereby indicating it was the intention to give the powers in respect to both trusts, and that there was only a failure so to do, to the extent that one of said powers,—that of making division,—was inapplicable, under the scheme of the will, to the trust, the subject of which was, solely, the allotted share of Ida Ophelia.

Having, for the present, regard only to this item 4 of the will, it seems to us very clear therefrom, that it was the intention of the testatrix to vest, immediately upon her death, all the property and estate covered by the power in the will of her deceased husband, in Joel C. Walter, in trust for the children of the deceased wife of said Joel C., in equal shares, and to give power to said trustee to receive the interest, income, rents and profits thereof, and pay the taxes and other charges thereon, and, in his discretion, make repairs and improvements on, and sell and convey, said property and estate, and finally make division between the beneficiaries, thereby ending the general trust covering the whole property, wherein all the children were *cestuis que trust.* The division being made by such trustee, and the property apportioned and set apart to the several beneficiaries, this item further provides, that "the share allotted to Ida Ophelia Walter" "shall be held in trust for

her, as aforesaid." How held in trust for her "as aforesaid?" Evidently by Joel C. Walter, and, upon his death, by the executors and trustees of his last will and testament. If the whole matter stood upon this item 4 alone, then, upon the division of the property, the share of Ida Ophelia would remain in the same trustee named in the general trust, but under a different trust, and the shares, as allotted, of Philip E. and Charles Joel, would vest in said Philip E. and Charles Joel, respectively. But, as we have already seen, it was provided in item 5 of the will, that as Charles Joel had shown indications of not being in his right mind, "his entire share or shares," under the will, should go to and be vested in a trustee, and that Alonzo J. Willard was appointed such trustee. When would the entire share or shares of Charles Joel vest in Willard, as trustee? Unless otherwise provided, a will speaks from the death of the testator or testatrix. In respect to the share of Charles Joel in the property of the testatrix owned in her own right, and mentioned in item 2, the will, in this item 5, does so speak. But it does not necessarily speak from that time, in regard to the share of Charles Joel in the property under the power, with which, and which only, item 4 deals. It is to be noted, that it is only in this first part of item 5, and in speaking of the vesting of titles in the trustee for said Charles Joel, the expression, "share or shares," is used, instead of the word "share," alone. The words, "shall go to and be vested in a trustee," evidently have reference to both the share in the property out of the power, and the share in the property under the power, and the conclusion, from such expression, would ordinarily be, that the title to both shares vested in such trustee immediately upon the death of the testatrix. But it is manifest this result can not be accomplished in respect to the share in the property under the power, until a division is made by the general trustee, without completely ignoring the express provision of item 4, devising and bequeathing all the property and estate

covered by the power, to Joel C. Walter. The principle that should govern is, to give effect to both items 4 and 5, and carry out the intention of the testatrix, as gathered from all the words and all the provisions of the will, considered as a whole. The titles to both shares of Charles Joel Walter are eventually to vest in the trustee named in item 5, but the will does not, in express language, designate the time or times when they shall so vest, and in order to carry into effect the substantial requirements of the will, it is necessary to hold that one of these shares is an undivided share, and vests immediately, and that the other is an allotted share, which can vest only when a division is made by the general trustee of the property under the power, and the respective shares therein of the several children ascertained and set apart. This construction merely, and in respect to one, only, of the two shares in property covered by it, postpones the operation of the trust created by item 5, and a different construction would wholly nullify and destroy an explicit provision contained in, and a clearly expressed trust created by, item 4.

The objections urged to the view of the will we have taken are not of controlling weight. We see no valid reason why there may not be two trustees and two separate and distinct trusts in regard to a portion of the property covered by the power, if only these trusts are so arranged, in regard to time and otherwise, as that there shall be no clashing. Here, the general trust which vested in Joel C. Walter naturally and necessarily ended when he made a division of the property in accordance with the express power given him in that behalf. Then, and not until then, did the share of Charles Joel Walter in the estate of Philip Maxwell vest in the trustee named in item 5 of the will, and then, and not until then, was fully accomplished the intention of the will in respect to "the entire share or shares" designed for the benefit of said Charles Joel, which was, that they should go to and be vested in the trustee nominated in said item. We see nothing inconsistent in the

provision that Joel C. Walter, while he is trustee of the whole of the property covered by the power, shall have power to sell and convey, and that Willard, trustee for Charles Joel, after the allotment and distribution, shall have power "to sell and convey any property belonging to the share of Charles Joel, when, in his discretion, it shall appear necessary and proper so to do."

It is no doubt true, that the testatrix, in the disposition of the property, was anxious to secure Charles Joel Walter an ample support. But it is to be borne in mind, that under the will his interest in her separate property was to vest immediately in the trustee appointed to act in his behalf; that at the time she made the will, (in 1870,) the Clark street building had not been destroyed by fire, and consequently she had not expended $15,000 of her own means in rebuilding, and had not borrowed nearly $30,000 for the same purpose, and that the $6000 of back taxes were not then due and unpaid on the property of her deceased husband. Consequently, the income to be derived from the one-third of her separate property, as it then stood, would have been quite considerable. And, besides this, said trustee was authorized to encroach upon the principal of the fund derived from said property, the provision of the will being, that he should "see that the said Charles Joel is properly maintained and amply provided for out of said property held hereunder by said trustee, he using such an amount for that purpose as, in his discretion, shall seem best." The testatrix had the utmost confidence in the integrity, sound judgment and business qualifications of Joel C. Walter. This is shown, not only by the provisions of the will itself, but conclusively appears from the evidence *dehors* the will. She therefore gave him plenary power over the entire estate derived from her husband, until a division thereof was made, and she left it largely to his discretion to determine the time and the manner of making such division. The property under the power was of the value of some

$175,000, and was, with the exception of the house and lot on Clark street, and a dwelling house at Lake Geneva, unimproved, and afforded no income, and the charges thereon, for taxes and otherwise, were very considerable. She, therefore, not only authorized him to receive the interest, income, rents and profits, and pay the taxes and other charges, but also to make repairs and improvements, and sell and convey, and do all other acts necessary and proper to fully execute the trust reposed in him. The power given him to sell and convey was not, in terms, confined to such sales or conveyances as might enable him to make a division or partition, but there being express authority to repair and improve, he had a clear right to make sales, for the purpose of making repairs or improvements upon the unsold portions of the estate, and also for the purpose of paying taxes and other charges thereon.

In our opinion, no one of the four trusts created by this will are mere naked or passive trusts, but all of them are active trusts. One of them is in all of the property under the power, and is for the benefit of all of the children of the deceased Ophelia, and is vested in Joel C. Walter, as trustee. Another of them begins when the share of Ida Ophelia is allotted, and is only in the share so allotted, and is in the same trustee. Another of the trusts of the will is imposed upon Alonzo J. Willard, as trustee, and begins when the testatrix dies, and at first, and prior to the division of the estate under the power, is confined to the share of Charles Joel in the property owned by the testatrix in her own right; and the remaining trust is in the share of said Charles Joel in the property under the power, and only vests in Willard after the allotment made,—and these two latter trusts, except in respect to the properties which are the subjects of such trusts, and the times when the titles thereto, respectively, vest in said Willard, are really and in fact one and the same trust.

In October, 1879, Joel C. Walter, as executor and trustee, sold and conveyed the land, an undivided one-third interest in

which is here in controversy, for the consideration of $11,900, which was then its full value.    There is no question of fraud involved in the case.    The trust estate, and the beneficiaries therein, received the benefit of the consideration money.    There was ample power in Joel C. Walter, the trustee, under the powers donated him by the will of Jerusha Maxwell, to make the sale and conveyance, and by his deed the title to the whole interest in the land passed to Beach, and through him to appellees.

The Superior Court properly dismissed the bill of appellants for want of equity therein, and the decree of that court is affirmed.                                            *Judgment affirmed.*