(No. 21801.—

THE FIRST TRUST AND SAVINGS BANK OF DEKALB, Admr. *et al.* Appellees, *vs.* EVA BAUMAN OLSON *et al.*—(HARRY CLARK *et al.* Appellants.)

*Opinion filed June 16, 1933—Rehearing denied October 10, 1933.*

ELMER H. BIELFELDT, JOHN H. SAVAGE, and JAMES G. HOLBROOK, for appellants.

ARCHIE G. KENNEDY, and JULIUS E. MATTESON, for appellees Floyd Crego *et al.;* LOWELL B. SMITH, CHARLES A. O'CONNOR, and CLARENCE E. GARDNER, for other appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

The First Trust and Savings Bank of DeKalb, administrator with the will annexed of the estate of Addie M. Jones, deceased, and administrator of the estate of Frank Root, deceased, filed its bill in the circuit court of DeKalb county for the construction of the will of Addie M. Jones. Harry Clark and Lulu Clark, two of the beneficiaries named in the will, have appealed from the decree which construed it. The heirs of Frank Root, who was a beneficiary named in the will, and Floyd Crego, a trustee under it, have assigned cross-errors.

Addie M. Jones died on February 1, 1928. Her heirs were Frank Root, a nephew, and Eva Bauman Olson, a niece. Root died on April 20, 1928. He left no widow or descendant and his heirs were several cousins, including Eva Bauman Olson. Addie M. Jones executed her will on January 11, 1927, and it was probated after her death. It follows, except the formal beginning and conclusion:

"*First*—I order and direct that my executor hereinafter named pay all my just debts and funeral expenses, as soon after my decease, as conveniently may be done.

"*Second*—I give, devise and bequeath the sum of one hundred dollars ($100) to the Oakwoods Cemetery Association of DeKalb, Illinois.

"*Third*—I give, devise and bequeath the sum of one hundred dollars ($100) to the Ohio Grove Cemetery Association of Cortland township, Illinois.

"*Fourth*—I give, devise and bequeath to my nephew, Frank Root, of DeKalb, Illinois, the sum of one thousand dollars ($1000).

"*Fifth*—I give, devise and bequeath to Lulu Clark of Joliet, Illinois, the sum of five hundred dollars ($500).

"*Sixth*—I give, devise and bequeath to my nephew, Frank Root, all the personal property of which I may die possessed, except such legacies as I may give, in this my last will and testament, to other persons.

"*Seventh*—I give, devise and bequeath to Frank Root aforesaid, to Albert Swanson, of White Bear Lake, Minnesota, my homestead premises located at No. 323 South Eighth street, DeKalb, Illinois, and described as lot seven (7), in block forty-seven (47) of Jones addition to the city of DeKalb, Illinois, to them and their heirs and assigns forever, share and share alike.

"*Eighth*—I give, devise and bequeath all the rest, residue and remainder of my estate, whether real, personal or mixed, corporeal or incorporeal, which I now own, may hereafter acquire, or to which I may be entitled, or of which I may die possessed, and wheresoever situated, to Floyd Crego, of DeKalb, Illinois, as trustee, in trust for the following purposes:

"He shall keep the same invested during the lifetime of my nephew, Frank Root, and shall at the end of each year, or oftener if he shall so desire pay the net income therefrom, to my nephew, Frank Root.

"*Ninth*—Upon the death of my nephew, Frank Root he shall pay to Roy Decker one-third ($\frac{1}{3}$) of the net sum remaining in his hands, and if said Roy Decker be dead then he shall distribute said funds in his hands as follows:

"He shall pay one-half ($\frac{1}{2}$) of the sum remaining in his hands to the said Lulu Clark, and one-half ($\frac{1}{2}$) of the net sum remaining in his hands to Harry Clark her husband, if the said Lulu Clark shall be dead then her share shall go to her children share and share alike, and if the said Harry Clark be dead then his share shall go to his children share and share alike.

"*Tenth*—It is not my desire to die intestate, and if for any reason any legacy herein shall lapse then said legacy shall fall into the residuary fund, to my said trustee, to be distributed as heretofore herein provided.

"*Eleventh*—I hereby appoint Floyd Crego, to be sole executor of this my last will and testament."

There was enough personal property to pay the debts and legacies mentioned in the first five paragraphs of the will and no question arises on those paragraphs or the seventh. The doubts in regard to the construction arise out of the eighth, ninth and sixth paragraphs. The eighth and ninth paragraphs gave all the residue of the testatrix's property (after the payment of the legacies to the two cemeteries, to Frank Root and Lulu Clark, the devise of the homestead premises and the gift of the residue of the personal property to Root,) to Floyd Crego, as trustee, in trust to keep it invested during Root's life; to pay the net income to him, and at his death to pay Roy Decker one-third of the net sum remaining in his hands, and if Decker was dead, then to pay one-half of the sum remaining in his hands to Lulu Clark and the other half to her husband, Harry Clark; and if Lulu Clark should be dead, then the will directed that her share should go to her children, and if Harry Clark should be dead, his share should go to his children. A part of the residue of the estate mentioned in the eighth paragraph of the will consisted of the interest of the testatrix in certain real estate which had formerly been owned by the testatrix and her brother, Ransom M. Jones, and which they had by a written agreement dated January 30, 1905, contracted to convey to Clifford S. Hunt for a consideration of $5775. Ransom M. Jones died on December 15, 1923, having devised all his property to the testatrix. Payments had been made by Hunt on the contract, but he was in default on February 1, 1928, though no default had been declared by the testatrix, the amount due on the contract at the date of the decree being $4710.88.

The claim of the appellants is that the residuary estate devised to Floyd Crego in trust should be distributed one-third to Roy Decker and one-third to each of the appellants. The heirs of Frank Root claim that by the contract of sale to Hunt there was an equitable conversion of the real estate into personal property, and by the sixth paragraph of

the will the unpaid part of the purchase price was bequeathed to Root and should be decreed to be paid to them as his heirs. Crego's claim is that the devise to him in trust gave him the fee in two-thirds of the residue, subject only to the payment of the income to Root; that there was no equitable conversion of the real estate into personalty, and that upon the death of Root and the survival of Decker the fee remained in Crego as his own property, discharged of any trust.

The intention expressed by the testatrix in the eighth paragraph of the will, which it is the sole purpose of construction to ascertain, is not doubtful. That intention is to give the residue of the testatrix's estate not disposed of by the seven preceding paragraphs to Floyd Crego as trustee, at least for the life of Frank Root, to keep it invested during Root's life and pay him the net income at the end of each year if he should desire it. The next paragraph, the ninth, while it is equally clear in the expression of the testatrix's intention, makes it seem probable that the testatrix has failed to fully express the intention she had in her mind. It directs that upon Root's death the trustee shall pay to Roy Decker one-third of the net sum remaining in the trustee's hands, and if Decker is dead, to pay one-half of the sum remaining in his hands to Lulu Clark and one-half of the net sum remaining in his hands to Harry Clark, her husband. If Lulu Clark should be dead her share was to go to her children, and if Harry Clark should be dead his share should go to his children. The language of this paragraph clearly expressed the intention that upon Root's death one-third of the trust estate should be delivered by the trustee to Decker, but if he should be dead the trustee should deliver one-half of the estate remaining in his hands to Lulu Clark and the other half to Harry Clark, but if either or both of them should be dead their respective shares should go to their respective children. Decker having survived Root was clearly entitled to one-third of the trust

estate, and, since he was not dead, the gifts to Lulu and Harry Clark which were to go to them if Decker was dead at the time of Root's death never took effect. As to the two-thirds not given to Decker the testatrix died intestate. She did not direct what should be done with that part of her estate. This was not in accordance with the intention which she had in her mind when she made her will, for she stated expressly in the tenth paragraph that it was not her desire to die intestate, and if for any reason any legacy should lapse, then that legacy should fall into the residuary fund to her trustee, to be distributed as provided in her will. This, however, was not sufficient to prevent her intestacy as to any part of her property which she did not, in fact, dispose of. The intention which must be given effect is that which the language of the will expresses, and not any other intention which the testatrix may be presumed to have had in her mind. The only way a testatrix can disinherit the heir is by giving the property to another. So, no matter how clear an intention she had expressed not to die intestate, her failure to provide for the disposition of the two-thirds of the residue after the death of Root did not exclude her heirs from inheriting that part of her estate. Where a condition has arisen in regard to a testator's estate which he had not taken into consideration and which he would probably have provided for if he had thought of it when making his will, the court cannot conjecture what provision he would have made unless that provision is contained in the words he has used in making his will. (*Moeller* v. *Moeller,* 281 Ill. 397; *Pontius* v. *Conrad,* 317 id. 241.) A devise by implication can be given effect only where the implication is so strong as to leave no reasonable doubt of the testator's intention; and furthermore, it must be founded upon some expression in the will. It cannot be inferred from absolute silence. (*Bond* v. *Moore,* 236 Ill. 576.) The language of the will is not capable of a con-

struction giving to the appellants the two-thirds of the trust estate held by Crego at Root's death.

All the property of the testatrix except the real estate included in the Hunt contract was disposed of by the provisions of the will other than paragraphs 8 and 9, so that those paragraphs are superfluous and ineffective if the interest of the testatrix in it is to be regarded as personal property. She was the owner of the legal title to the land, though she had sold it and received a part of the purchase money. Under these circumstances the purchase money, when paid, will belong to her devisee of the land. *Wright* v. *Minshall,* 72 Ill. 584; *Covey* v. *Dinsmoor,* 226 id. 438; *Adams* v. *Peabody Coal Co.* 230 id. 469.

Floyd Crego, the trustee, in support of the cross-errors assigned by him, argues that it was erroneous to hold that there was an intestacy as to any part of the estate, not to decree that Crego took the residue of the estate subject only to the execution of the trust, and not to decree that two-thirds of the residue of the estate remaining in the possession of Crego at the death of Frank Root became his property. The devise to Crego was expressly to him "as trustee, in trust for the following purposes," which were to keep the residue invested during Root's life and at his death to pay over to Roy Decker one-third of the estate in his possession, or if Decker was then dead, to divide it equally between the Clarks or among their children, as directed in paragraph 9. Under this provision of the will the trustee's duties expired on the death of Root. The estate he took was only so much as was necessary for the purposes of the trust upon which he held the estate. The distribution of the estate was required to be made on Root's death. The fact that Decker's survival of Root caused the trust in favor of the Clarks to fail did not substitute Crego as a beneficiary of the trust. There is no language in the will which would justify its construction as a devise of the whole beneficial interest to Crego. It would be an un-

usual construction of a devise in trust that a failure of the will to declare fully the purposes of the trust because of a manifest error of the scrivener in reducing the will to writing, or of the testator in his instructions to the scrivener, should result in the trustee taking the whole estate discharged of the trust. This was not the case of a gift to a devisee subject to a charge in favor of another, but was a devise to a trustee to carry out the intention of the testatrix and the particular trust on which the estate is devised. In all such cases, if the trust fails by accident or otherwise, the result is not a vesting of the estate beneficially in the trustee but is a resulting trust for the benefit of the grantor or devisor and his heirs. (Story's Eq. Jur. secs. 1199, 1200; *Hopkins* v. *Grimshaw,* 165 U. S. 342.) The rule is stated by Jarman (1 Wills, 5th Am. ed. 578): "Where, therefore, the whole legal estate is given for the purpose of satisfying trusts expressed, and those trusts do not, in their execution, exhaust the whole, so much of the beneficial interest as is not exhausted belongs to the heir. But where the whole legal interest is given for a particular purpose, with an intention to give to the devisee the beneficial interest if the whole is not exhausted by that particular purpose, the surplus goes to the devisee, as it is intended to be given to him."

There is not the slightest indication in the will that the testatrix intended that Crego should have any beneficial interest, under any circumstances, in the property given to him in trust. Therefore the beneficial interest passed to the testatrix's heirs.

The decree of the circuit court is affirmed.

*Decree affirmed.*