(No. 26742.—

JOHN F. CAHILL, Admr., *vs.* FREDERICK MICHAEL *et al.*— (FREDERICK MICHAEL, Appellant, *vs.* M. S. A. MICHAEL *et al.,* Appellees.)

*Opinion filed November 17, 1942—Rehearing denied Jan. 14, 1943.*

Ross & Watts, Mayer, Meyer, Austrian & Platt, Poppenhusen, Johnston, Thompson & Raymond, H. L. Koontz, and Smith, Wharton & Jordan, (Floyd E. Thompson, Frederic Burnham, Paul M. Godehn, and Wadsworth Watts, of counsel,) for appellant.

Winston, Strawn & Shaw, Joseph Levinson, A. A. McKinley, and Arthur A. Sullivan, (Silas H. Strawn, John D. Black, James H. Winston, John C. Slade, Thomas A. Reynolds, Gerard E. Grashorn, and L. A. Martin, of counsel,) for appellees.

Mr. Justice Gunn delivered the opinion of the court:

Frederick D. Michael, a citizen of Cook county, died December 28, 1938, leaving a last will, in which he designated Frederick Michael of Greensboro, North Carolina, sole executor. The will was duly probated in the probate court of Cook county, but because of nonresidence of the named executor, Martin J. O'Brien as Public Administrator of Cook county was appointed administrator with the will annexed. October 29, 1939, O'Brien, as administrator with the will annexed, filed a complaint in the circuit court of Cook county to construe the last will of said Frederick D. Michael. Martin J. O'Brien died while in office, and John F. Cahill, who was appointed Public Administrator of Cook county, was substituted as plaintiff in his place. Appellant Frederick Michael filed an answer to the effect the will properly construed gave him the entire residuary estate, and the heirs-at-law also answered claiming the will was so uncertain and ambiguous that it amounted to an incomplete testamentary disposition, and therefore the deceased died intestate.

Service was had upon all of the heirs, devisees and legatees of Frederick D. Michael, deceased, and issues formed upon the respective answers filed to the complaint.

The actual controversy is between Frederick Michael, who was not an heir-at-law of the deceased, mentioned in the will as the residuary legatee, and the heirs-at-law of Frederick D. Michael, deceased, who were not mentioned in the will at all. The will is as follows:

### "WILL

I, Frederick D. Michael, of the City of Lexington, Norrh Carolina, a bachelor, and having no descendents, make, publish and declare this instrument as my last will and testament.

FIRST: Without the necessity of first obtaining an order or allowance by the Probate Court, my executors after my death shall pay all of my just debts and the hereinafter mentioned expenses of my last illness and funeral.

SECOND: Upon my death, wherever I happen to be, I hereby direct that my executors shall order the undertaker in said place to embalm my body, place it in a suitable coffin and ship it to the undertaker at Lexington, North Carolina. I furthermore direct my executor to instruct said undertaker at Lexington, North Caroline, to bury my body at the Shiloh Church Cemetary in Davidson County, North Carolina, by the grave of my dear father and mother; to have the grave dug; to get a suitable tombstone for my grave, and to secure the services of the Shiloh Church minister to officiate during said burial. I also direct my executor to pay all of the expenses connected with the duties set forth in this paragraph out of the general assets of my estate.

THIRD: I give, bequeath and device all the rest and residue of my estate, whether real or personal, and wheresoever situated, share and share alike, to my first cousin, Frederick Michael, son of R. L. Michael, 311 East Hendrix Street, Greensboro, North Carolina. If my cousin, Frederick Michael, shall have died before me, his or her share shall be delivered per stirpes to his descendants living at my death:

FOURTH: I nominate and appoint Frederick Michael, of 311 East Hendrix Street, Greensboro, North Carolina, sole executor of this will; said executor to serve without bond, and generally have full power and authority to deal with my said properties in the same manner that I could do if living. No property should be sold until a reasonable price can be had. And the executor in making distribution of the principal hereunder, may do so in money, securities or other property, and he will first deduct his necessary expenses and salary for any time he has put in managing and acting as such executor; and his judgment as to what shall constitute a just and proper division or apportionment among the beneficiaries shall be binding and conclusive upon all parties.

FIFTH: All other wills or documents of any kind previously written by me is hereby cancelled and marked void, as this is intended to be my last will.

IN WITNESS WHEREOF I have hereunto set my hand to this, my last will and testament, on this 13th day of May A. D. 1936.

FREDERICK D. MICHAEL.

We hereby certify that FREDERICK D. MICHAEL, the testator named in the foregoing Instrument of writing, subscribed his name thereto, on this day, and to us declared the same to be his Last Will and Testament; and that we subscribed our names hereto as witnesses in the presence and at the request of said testator, and in the presence of each other, and at the time of the execution of said Instrument, as aforesaid, and of our subscribing the same as witnesses, the said testator was of sound and disposing mind and memory to the best of our knowledge and belief.

WITNESS our hands in the City of Miami, Florida, this 13th day of May, A. D. 1936.

| NAME | ADDRESS | |
|---|---|---|
| B. A. Trussell | 125 N. E. 1st St. | Miami, Florida |
| A. G. Seagrut | Patricia Hotel | Miami, Florida |
| M. Antoinette Harden | R. 100 Bedford Bl. | Miami, Florida" |

Upon a hearing the circuit court of Cook county decided that Frederick Michael was the only person, legatee and devisee to take the property of the deceased under said will. Upon appeal the Appellate Court for the First District held the will was so uncertain the deceased did not dispose of his estate to anyone, and therefore died intestate as to the whole of his estate, the same as though no will had ever been made. We have allowed an appeal to this court.

The contention made by appellant is that the will clearly and distinctly devises the entire residuary estate to Frederick Michael, and that the ambiguous statements contained in the will hereinafter referred to can either be construed as being consistent with such a devise, or may be properly disregarded as contrary to the manifest intention of the testator. On the other hand, the appellees contend (a) that the whole context of the will, including expressions which are claimed to be contradictory or repugnant by implication,

show that no complete will in fact was ever made, because it is a case of an attempted will in which there is a hiatus or gap, which causes it be incomplete; and (b) that the will shows upon its face the property is to be divided, and nowhere specifies appellant is to take the undivided whole estate; and therefore the residuum was not disposed of, leaving it to descend as intestate property.

There are certain fundamental rules which govern the construction of wills. And at the outset we may say that cases upon the construction of wills do not have the controlling force of precedents that they do in other cases for the reason that the form of a will does not follow a common standard, such as do deeds, leases, contracts and other similar written documents, but a will is a writing found in a great variety of forms, and executed under circumstances peculiar to each individual case. *Walker* v. *Walker*, 283 Ill. 11; *Smith* v. *Garber*, 286 id. 67.

In order to construe a will the court will examine the surrounding circumstances for the purpose of placing itself in the position of the testator as it existed when the will was made. (*Himmel* v. *Himmel*, 294 Ill. 557; *Quigley* v. *Quigley*, 370 id. 151; *LaRocque* v. *Martin*, 344 id. 522; *Moffet* v. *Cash*, 346 id. 287; *McCormick* v. *Sanford*, 318 id. 544.) But if the language of the will is clear the court will not consider surrounding circumstances for the purpose of varying an intention clearly expressed. (*Tomlin* v. *Laws*, 301 Ill. 616; *Knight* v. *Knight*, 367 id. 646.) The intention of the testator is to be ascertained from the will itself. (*Chapin* v. *State Treasurer*, 361 Ill. 645; *Levings* v. *Wood*, 339 id. 11.) And when the will is examined the court cannot begin by assuming a given intention upon the part of the testator. (*Pontius* v. *Conrad*, 317 Ill. 241; *Wickizer* v. *Whitney*, 364 id. 125; *LaRocque* v. *Martin, supra.*) The question always is, what is the meaning of the words used in the will? (*Dollander* v. *Dhaemers*, 297 Ill. 274; *Pontius* v. *Conrad, supra; Knight* v. *Knight*,

*supra.*) And above and beyond these general rules, if the intention of the testator manifested in the form required by law is clear, the court will uphold it, even though a different result would be reached by rules of construction applying to specific provisions of the will. (*Brittain* v. *Farrington,* 318 Ill. 474; *Himmel* v. *Himmel, supra.*) Or, as we said in *Smith* v. *Shepard,* 370 Ill. 491, "The intention of a testator manifested in his will is determined in two ways. One, by ascertaining his actual meaning from the words employed, to which all rules of construction give way, and the other, by finding his presumed intention gathered by the application of rules of construction applicable to all cases where the meaning is obscure, doubtful or uncertain."

Turning now to an examination of the will under consideration, which both parties seem to concede was prepared by the testator himself, we find he describes himself as a bachelor having no descendants, who first gives directions to his executors to pay debts, expenses of last illness and funeral expenses, without an order of the probate court. It next directs his executors to make arrangements for his burial in the family lot in Lexington, North Carolina, beside his father and mother, and to get a suitable tombstone, and for certain church officials to officiate at the funeral, which expenses are to be paid out of the general assets of the estate. The third clause is the one concerning which there is the most controversy. It bequeaths and devises "all the rest and residue of my estate, whether real or personal, and wheresoever situated, *share* and *share* alike, to my first cousin, Frederick Michael, son of R. L. Michael, 311 East Hendrix street, Greensboro, North Carolina," and then contains a provision that if such devisee shall have died before the testator such share shall be delivered *per stirpes* to his descendants living at the testator's death. It is asserted that while this clause would make a definite devise to Frederick Michael of all of the

estate, not necessary for the payment of debts and funeral expenses, without the words *share and share alike,* nevertheless the use of these words has the effect not of making the will ambiguous, but of rendering it an incomplete and unfinished will, and therefore no will at all.

It is further contended by appellees that if the words "share and share alike" be disregarded in the construction of the will, its meaning would be completely changed and the effect would be that of the court making the will instead of the deceased. It is also urged that the fourth paragraph of the will, nominating Frederick Michael as executor, which makes provision that he may deduct his necessary expenses and salary, and use his judgment as to what shall constitute a just and proper division or apportionment among the beneficiaries, indicates the will is incomplete because only one beneficiary is actually named, from which it necessarily follows that to make a division there was somebody else in mind, whose name was omitted.

It is our first duty to examine the will in the light of the surroundings of the testator, and see what may be gathered from within its four corners. Frederick Michael, the designated devisee, was well known to the testator and was on friendly terms with him. He was not an heir-at-law, but the son of an heir-at-law. There were forty-four heirs-at-law, some of whom were known to the testator, among which were some whom he greatly disliked and others with whom he appeared to be on good terms, but most of whom he had not known or been in touch with for more than twenty-five years. A number of circumstances, such as written directions to appellant found in the safety box of deceased, but not delivered, and evidence of similar import, have been proven, which go beyond the permissible proof of surrounding circumstances which may be considered by the court. *Quigley* v. *Quigley, supra.*

Considering the will in the light of the permissible surrounding circumstances, the intention of the testator may be gathered upon the following matters: (1) he wished to

die testate; (2) he desired his property be administered by an executor; (3) he canceled all previous wills or documents; (4) he intended Frederick Michael to be a beneficiary; (5) he intended the descendants of Frederick Michael to be beneficiaries in case the latter died before he did; (6) he failed to name any of his heirs-at-law as beneficiaries; (7) he provided that his just debts be paid; (8) he desired to be buried in a certain place with certain ceremonies; (9) the named beneficiary was designated as a certainty, being identified as the son of R. L. Michael, living at a given address. The matters on the face of the will which appear to be inappropriate, inconsistent or contradictory are the following: In the third paragraph he uses the words "share and share alike" as applicable to a single beneficiary. In the same paragraph he refers to Frederick Michael as "my first cousin," when as a matter of fact he was a grand nephew. In the same paragraph, in disposing of the share of Frederick Michael in case of prior death, he refers to it as "his or her share." In the fourth paragraph, after directing the executor to make distribution, he provides the executor may deduct his necessary expenses and salary, and in the same paragraph recites the judgment of the executor of what shall constitute a just and proper division among the beneficiaries shall be binding upon the parties. In addition there are a number of misspelled words.

Considering the will itself and these matters of intention which are fairly obvious, it is clear the testator intended not only that Frederick Michael, but that the children of Frederick Michael, in case of the latter's death, should be beneficiaries. We are required to ascertain the meaning of the words the testator used. (*Dollander* v. *Dhaemers, supra; Knight* v. *Knight, supra; Brill* v. *Green,* 316 Ill. 583.) The specific naming of the beneficiary in a will, without more, excludes all other persons. It is not necessary in a will, where there is a specific devisee, to name the persons not receiving any benefit thereunder. The

appellees say the will is incomplete. If it is incomplete it must be because it appears from the will the testator had other beneficiaries in mind whom he intended to name, but omitted naming them, thus leaving the will incomplete.

It is asserted that by the use of the words "share and share alike" before the name "Frederick Michael," in the third paragraph, it is absolutely necessary to conclude that the latter, under the will, was to share with some one else, but to infer such a fact there must be such a probability, which arises from an examination of the will, which is so strong it cannot be supposed any other intention existed. (*Pontius* v. *Conrad, supra; First Trust & Savings Bank of DeKalb* v. *Olson*, 353 Ill. 206.) There is no person mentioned in the will who, with Frederick Michael, could take share and share alike. We cannot infer that he intended this suppositious person to be one or all of the heirs of the testator, or other persons who were not heirs. In other words, by the use of the words "share and share alike" there is no indication of any specific person who is to share with the designated beneficiary. The possible inference from these words is considerably lessened when we see many other inaccuracies in the language of the will. When we find "his or her share" applied in the case of the death of Frederick Michael, and the executor admonished to get the best price upon a sale of property, and language making the executor's distribution among the beneficiaries conclusive, the inference is strong that it was the copy of a form of will, which contained more than one beneficiary. It is to be noted the attesting clause, which would require no change, is in perfect form. The cumulative effect is to lessen the weight of "share and share alike" standing alone, and give them more the appearance of one of several improper terms copied by one unlearned in the law from some inappropriate form. To give them any greater weight would be a mere guess or speculation. *LaRocque* v. *Martin, supra; First Trust & Savings Bank of DeKalb* v. *Olson, supra.*

It is also to be observed that the disposing words give the entire residuary estate to Frederick Michael. The words "share and share alike" are not disposing words, but only words which are intended to show how the beneficiary or beneficiaries participate in the property. The Appellate Court found the deceased died intestate. The court will prefer any construction of a will to avoid intestacy. (*Hartwick* v. *Heberling,* 364 Ill. 523; *Booth* v. *Krug,* 368 id. 487.) The presumption against intestacy is strong where there is a residuary clause. (*Strauss* v. *Strauss,* 363 Ill. 442; *Levings* v. *Wood, supra.*) Frederick Michael was the residuary legatee. The courts will endeavor to reconcile inconsistent or repugnant provisions rather than to ignore or declare both of them void. (*Jenks* v. *Jackson,* 127 Ill. 341; *Strauss* v. *Strauss, supra.*) If the words "share and share alike" in the third paragraph of the will were not present there could be no doubt but that Frederick Michael was the sole beneficiary after the payment of debts and funeral expenses, as the words contained in the fourth paragraph are only administrative provisions, and not those which make a disposal of any of the property.

In construing a will the courts have not only stricken words from a will, but have inserted or transposed words in order to arrive at the true intention of the testator. In Jarman on Wills, 5th ed. vol. 2, page 53, after citing a number of illustrative cases, it is said: "These cases also exemplify a rule * * * that where there is a clear gift in a will it cannot afterwards be cut down except by something which with reasonable certainty indicates the intention of the testator to cut it down." To the same purpose *Tripp* v. *Krauth,* 340 Ill. 11, holds a later provision in a will will not cut down an earlier one unless it is as *clear* and *unambiguous* as the original provision. (*Jensen* v. *McMahon,* 324 Ill. 574; *Sweet* v. *Arnold,* 322 id. 597.) It follows a specific definite gift is not reduced or destroyed by an indefinite or uncertain provision, the meaning of which is conjectural.

It is also said in Jarman on Wills, *supra,* "It is clear that words and passages in a will, which are irreconcilable with the general context, may be rejected, whatever may be the local position which they occupy; for the rule which gives effect to the posterior of several inconsistent clauses must not be so applied as in any degree to clash or interfere with the doctrine which teaches us to look for the intention of a testator in the general tenor of the instrument, and to sacrifice to the scheme of disposition so disclosed any incongruous words and phrases which have found a place therein."

One of the earliest applications of this principle is to be found in *Smith* v. *Pybus,* 9 Vesey, 566, where a will provided a certain sum should be equally divided between Martha Briggs, Charles Small Pybus and Catherine Amelia Pybus "to them and their heirs or the survivor of them *in the order they are now mentioned."* In referring to the last words the chancellor said: "The proposition, equally to divide a fund between two persons in a given order, is mere nonsense, directly repugnant. There can be no order, in which they are to take, if it is to be devided: there can be no division, if there is an order, in which they are to take. * * * They are insensible, as coupled with such preceding words. The only question therefore is, whether words, having a plain meaning, are to be rejected for the sake of words, of which you do not see the sense or meaning." The judgment of the court rejected the words as having no effect whatever. The reasoning of this case is apt here, as the words "share and share alike" are applied solely to Frederick Michael, and to no one else. They do not constitute a clear provision to cut down the gift to Frederick Michael, since he is specifically named, and the persons with whom he might share are left entirely to conjecture. "Share and share alike" does no more than make us guess there was a forgotten devisee, which is short of the certainty required. *Tripp* v. *Krauth, supra.*

While, as pointed out above, holdings in other cases are not of binding effect in any case except as to the will directly involved, yet numerous examples have occurred in this State, in which words were rejected, added or transposed. Thus in *Jenne v. Jenne*, 271 Ill. 526, the will provided that "the executors of my estate shall pay * * * three thousand dollars, ($3,000) share and share alike, to each one of my three (3) half sisters. * * * If in the event of the death of one or all of said half sisters the above amount shall be evenly divided among their legal heirs as the laws of their country may direct." While the court commented that if the words "each one of" had been left out in the sentence, where they occur after the words "share and share alike," there would be no question about the meaning of the sentence, it would show a clear intent to bequeath $3000 to the three half-sisters, said amount to be equally divided between them share and share alike. If, on the other hand, share and share alike had been left out there would be a plain bequest to each one of the testator's half-sisters, or a total of $9000. In disposing of the case the court construed the will to give each half-sister the sum of $3000, the same as though the words "share and share alike" had been omitted.

*Halderman v. Halderman,* 342 Ill. 550, *Abens v. Kennedy,* 314 id. 35, *Cronin v. Cronin,* 314 id. 345, *McKie v. Collinson,* 292 id. 458, *Glover v. Condell,* 163 id. 566, *Rose v. Hale,* 185 id. 378, and *Young v. Harkleroad,* 166 id. 318, all present examples where this court did not hesitate to construe a will according to its manifest intention, even though it required disregarding certain words, or adding or transposing other words.

Appellees contend that the will nowhere says Frederick Michael is to take the undivided whole estate. Just what they mean by the term "undivided" is not made clear. However, the will after providing for the payment of debts and funeral expenses does devise "all the rest and residue

of my estate," which was the sole estate subject to disposition. The claim of appellees that there is a hiatus or gap in the will by a failure to complete it is not sustained, because there is nothing in the will to indicate there was such a gap or hiatus. When the "rest and residue" was given to Frederick Michael there could be no gap to be filled by other beneficiaries. The words "share and share alike" might have some peculiar meaning to the testator, but it certainly could not have the meaning by implication or otherwise to furnish a sure basis upon which to say the testator intended some unknown persons to further share in his estate.

Appellees have cited cases which they assert are authority for holding the words in the will indicate an uncertain or incomplete devise. In *Rodisch* v. *Moore*, 257 Ill. 615, the will gave one half to one legatee, one fourth to another and one half to a third. Five fourths was devised, and it was impossible from the will itself to determine which gift controlled, because each was given with equal certainty. In *Engelthaler* v. *Engelthaler*, 196 Ill. 230, after making certain specific legacies, the will undertook to dispose of the homestead after the death of the wife. The disposing clause did not name a devisee, which of course left the property intestate. The plaintiff tried to reform the will by showing by extrinsic evidence that he was the intended beneficiary, but this was denied because the court is without power to add to or reform a will on the ground of mistake. It was simply a case where certain property was not disposed of in the will, and not comparable to a case where the property is all disposed of by one clause and its effect sought to be minimized by words of dubious meaning. In *Karsten* v. *Karsten*, 254 Ill. 480, the clause involved read: "Second that is my Will that My Daughter Mary * * * and My Son Charles * * * and My Daughter annie * * * shall be Equally Devided between all three." There no property was mentioned at all. The court simply held it could not make a will where

the testator had not, saying: "The subject of the devise in the second item was not merely uncertain or indefinite, but was entirely omitted, and as there was nothing mentioned, the court had no power to add to it by inserting in it something that did not appear." *Foss* v. *State Bank & Trust Co.* 343 Ill. 94, was a case where an attempt was made to so construe a will as to make a disposition of property where the testator had not done so. In denying relief the court said: "Where a will fails to dispose of all of testator's property or income, leaving a part thereof intestate, the presumption against intestacy does not authorize the court to place a construction upon the will itself not justified by the language used, for the purpose of making it dispose of all such property or income." The last three cases have no application because no property was devised. Here all of the property was disposed of. In each case there was a description of devisees but no property passed to them, and the court was asked to describe a gift the testator had not described. In the present case both the property and the devisee are described, and a gift to the latter sought to be cut down or eliminated by words which, giving them their most extended meaning, lacked the certainty of the gift to Frederick Michael.

Appellees place great reliance upon *Hampton* v. *Dill*, 354 Ill. 415. We do not think it has any application. The testator made a will, and provided for a disposition of his property only in case he died married. All the contingencies upon which legacies were made was on the condition that he marry and have a widow. He did not marry, and the ultimate beneficiary, who was to take after the death of the wife, contended he had the same interest in such case as he would have had had the condition been fulfilled. This contention was denied because the testator made no disposition of the property in case he did not marry. In one marital state he died testate; in another intestate. We fail to see what light this throws upon the present situation, which only calls for a decision of whether, by the presence

of the questioned words, the devise to appellant was destroyed by uncertainty created thereby.

From the many cases cited we fail to extract the principle that a devise certain as to person and property becomes void if some other word or phrase appears, which, without describing property or beneficiary, might cause us to conjecture as to its meaning or effect upon the rest of the will.

Appellees also contend the will is not capable of two constructions, but only one, and that construction is that the will is so uncertain it is no will at all. It would be a dangerous doctrine to hold the principal purpose or intent of a will is to be derived from terms of uncertain meaning, where a distinct intention otherwise clearly appears. It would, in effect, make the validity of a will depend upon the absence of obscure or ambiguous terms, from which guesses or conjecture may be drawn instead of ascertaining whether devises, otherwise certain, may be upheld, by either disregarding uncertain language or by finding it not inconsistent with the gift which is otherwise certain. In other words, the object of construction is to interpret and give effect to a will, if possible, unless the language is such as to imperatively require the whole will be rejected.

We find that taking the will as a whole and examining all of its parts, together with surrounding circumstances and the rules of construction applicable thereto, there can be but one construction of the will under consideration, and that is that Frederick Michael was intended to be the sole devisee in case he survived the testator, and in case he did not survive him, his descendants were to take his place as beneficiaries.

The judgment of the Appellate Court for the First District is reversed and the decree of the circuit court of Cook county is affirmed.

*Judgment of Appellate Court reversed;*
*decree of circuit court affirmed.*