EMMA F. DICKINSON *et al.* Defendants in Error, *vs.* REU-
BEN BELDEN *et al.* Plaintiffs in Error.

*Opinion filed April 22, 1915—Rehearing denied June 10, 1915.*

1. JURISDICTION—*when judgment cannot be questioned for lack of jurisdiction of the person.* The judgment of a court of general jurisdiction cannot be questioned on the ground of lack of jurisdiction of the person unless there is proof of such lack of jurisdiction sufficient to overcome the favorable presumption.

2. SAME—*general chancery powers of a foreign probate court must be properly invoked.* The general chancery powers conferred by statute upon a foreign probate court cannot be exercised unless invoked in a proper proceeding, and where the proceeding in the probate court is merely to distribute the ancillary estate under a will, without formal pleadings and proceedings, with parties plaintiff and defendant and notice duly shown, the purpose of such proceeding will be held to be merely for the protection of the ancillary executor, and the order construing the will is not binding as between adverse claimants to the estate.

3. SAME—*when an affidavit does not show notice to the defendants.* An affidavit by the attorney for the ancillary executor to the effect that he has caused publication of notice to be made as directed by the foreign probate court, "and by mailing post-paid a copy thereof to each and every one of the persons interested in said estate," states conclusions and not facts and does not show notice to or service upon any or all of the defendants.

4. SAME—*when an appearance by executor is not binding upon distributees.* An appearance in a foreign probate court by the executor of the will for the purpose of asking to have the ancillary net estate turned over to him for distribution under the laws of Illinois is not binding upon the distributees of the estate who are not otherwise having their day in court.

5. WILLS—*distribution by court of ancillary jurisdiction must be in accordance with law of domicile.* The distribution of ancillary assets by a foreign court must be in accordance with the law of the domicile of the testator or of the intestate, as the case may be, and the court of ancillary jurisdiction may determine what is the law of the domicile.

6. SAME—*when a specific legacy does not fall into the residue.* Where a specific legatee, who is also a residuary legatee, dies before the death of the testator, his lapsed specific legacy does not fall into the residue but the same will descend to the heirs of the testator as intestate property, as in such a case the general rule

as to lapsed legacies passing under the general residuary clause has no application.

7. CONFLICT OF LAWS—*the place for final accounting and settlement is in the forum of the principal administration.* The place for final settlement and accounting among the heirs and legatees of an estate is in the forum of the principal or original administration and not in the forum of the ancillary administration.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Menard county; the Hon. HARRY HIGBEE, Judge, presiding.

G. B. WATKINS, E. H. GOLDEN, JOHN C. HAMMOND, and A. W. LILIENSTEIN, guardian *ad litem,* (THOMAS W. SWAN, of counsel,) for plaintiffs in error.

JULIAN H. HALL, and SMOOT & LANING, for defendants in error.

Mr. JUSTICE WATSON delivered the opinion of the court:

By a writ of *certiorari* granted at the October term, 1914, of this court there is brought for review a judgment of the Appellate Court for the Third District placing a construction upon the will of Elizabeth S. Lee, a widow, late of Menard county, who died without issue October 29, 1911, and whose will was probated in said county on December 30 of that year. The will mentioned is here set out in full:

"I, Elizabeth S. Lee, of the county of Menard and State of Illinois, do make and declare this to be my last will and testament.

"*First*—I direct that all my debts and funeral expenses be paid, and I direct that I be buried by the side of my husband and son in the Indian Point Cemetery, near the Presbyterian church.

"*Second*—I give and bequeath as follows: To the Athens Presbyterian church $500, to be expended by it in repairs and improvements on the church building when needed; to the North Sangamon Presbyterian church $500; to the Board of Foreign Missions of the Presbyterian Church in the United States of

America $100; to the American Bible Society $100; to Wallace Preston, of St. Joseph, Michigan, $500; to John W. Little, Bellevue, Nebraska, $500; to Albert Loomis, of St. Louis, Missouri, $500; to Sarah F. Hitchcock, of Athens, Illinois, $500; to Otis Allen and Fannie G. Allen, grandchildren of my sister, Celia Wells, late of Hatfield, Massachusetts, the sum of $250 each.

"*Third*—I give and bequeath all my money on deposit in the savings banks in the State of Massachusetts, together with the savings bank books representing such deposits, one-half to my brother, Calvin S. Loomis, of Whately, Massachusetts, the other half to be equally divided between the children of my deceased sister, Sarah A. Belden, late of Hatfield, Massachusetts, the descendants of a deceased child to take the parent's share, and I appoint my nephew, Daniel W. Wells, as ancillary executor of this will in the State of Massachusetts.

"*Fourth*—I give and devise my home in Athens, Illinois, to my brother, Calvin S. Loomis, of Whately, Massachusetts. I give and bequeath to my brother all of the contents of my said home place, trusting that he will divide the same as I shall write him, no sale and no valuation of the same to be made.

"*Fifth*—All the rest and residue of my estate, both real and personal, and any lapsed legacies, I give, devise and bequeath as follows: One equal part thereof to my brother, Calvin S. Loomis, of Whately, Massachusetts, or, in case of his death, to his descendants, according to the laws of descent of the State of Illinois; and the other one equal part thereof to be divided equally among the children of my deceased sister, said Sarah A. Belden, the descendants of a deceased child to take the parental share.

"*Sixth*—I hereby appoint Franklin Ridgely, of Springfield, Illinois, executor of this will, and direct that he be not required to give bond as such executor.

"Witness my hand and seal this 14th day of April, A. D. 1909."

Franklin Ridgely qualified as executor in Illinois and Daniel W. Wells qualified as ancillary executor in Hampshire county, Massachusetts. Under an order of the probate court of said Hampshire county, made upon his petition, the ancillary executor made distribution of $16,000 of the estate found in Massachusetts, the probate court having construed the third and fifth clauses of the will so as to bring the legacy of Calvin S. Loomis, who predeceased the testatrix and who died without issue, into the residue of the estate and so as to cause his legacy to be distributed under the residuary clause. A bill in chancery

was afterwards filed in the circuit court of Menard county by certain defendants in error who are heirs-at-law of said testatrix, setting up the aforementioned facts and praying a construction of said will. A further prayer of the bill was that the circuit court should order a distribution of the whole estate, except the Belden moiety thereof and except the special bequests made in the second clause, as intestate estate, charging the plaintiffs in error who are the heirs-at-law of Sarah A. Belden, deceased, with such sum as they received from the ancillary estate in excess of what they would have received had the Massachusetts probate court held the Loomis legacy to be intestate estate. The executors were made defendants and answered the bill, as did the plaintiffs in error. Replications were filed, and the cause was heard in open court by the chancellor and a decree entered in accordance with the prayer of the bill, except the chancellor held the decision of the probate court in Massachusetts, while incorrect from a legal standpoint, was binding upon the defendants in error, complainants in the bill. Appeals were taken to the Appellate Court for the Third District by the complainants below, and also by the Belden heirs, plaintiffs in error here, and the appeals were in that court consolidated and heard and decided as one cause. The Appellate Court affirmed the holding of the circuit court as to the lapsed Loomis legacy being intestate estate of Elizabeth S. Lee but reversed the decree on the ground the Massachusetts probate court was without jurisdiction of the defendants in error, and its alleged erroneous decision, while a protection to the ancillary executor, is not binding upon the distributees of the Lee estate and as to them is not *res judicata.*

By the assignments of error upon this record we are asked to determine, first, is the Loomis legacy, under a proper construction of the third and fifth clauses of the will, intestate estate; and second, are the defendants in error precluded by the order of the Massachusetts probate

court, the said order not having been appealed from and being now unreversed and in full force and effect.

The amount to be returned into the estate or otherwise accounted for by the plaintiffs in error if the view taken by the Appellate Court is sustained is $4000, but incidentally the disposition of the entire personal estate, amounting to about $60,000, depends upon the judicial settlement of this controversy. The only real estate inventoried was the home of Mrs. Lee in Athens, Illinois, and that has been disposed of by the circuit court in another suit.

Under the statutes of the State of Massachusetts received in evidence the probate court of Hampshire county has, in addition to the ordinary probate jurisdiction, general jurisdiction to make the order for distribution of the ancillary assets and to construe the will upon petition filed to that end and upon notice to the parties to be affected by the order; (Mass. Rev. Laws of 1902, chap. 143, secs. 1, 2, and chap. 162, sec. 5; *Welch* v. *Adams,* 152 Mass. 74;) and this upon such notice as may be ordered by the court, the statute being silent as to the form of notice. (Mass. Rev. Laws, chap. 141, sec. 21.) But the distribution must be made in accordance with the law of the domicile of the testator or of the intestate, as the case may be; (*Cooper* v. *Beers,* 143 Ill. 25; *Matter of Hughes,* 95 N. Y. 55; *Parker's Appeal,* 61 Pa. St. 478; *Rackemann* v. *Taylor,* 204 Mass. 394; *Osburn* v. *McCartney,* 121 Ill. 408;) and the courts of the ancillary jurisdiction may determine what is the *lex loci domicilia.* (*Harvey* v. *Richards,* 1 Mason, 381.) The judgment of a court of general jurisdiction may not be questioned on the ground of lack of jurisdiction of the person unless there is proof to the contrary sufficient to overcome the favorable presumption. *Logan* v. *Williams,* 76 Ill. 175; *Turner* v. *Jenkins,* 79 id. 228; *Lees* v. *Whetmore,* 12 N. W. Rep. (Iowa,) 238.

The notice ordered by the probate court of the petition for an order for distribution was directed to be published

for three consecutive weeks, once in each week, in a newspaper, and "by mailing post-paid a copy thereof to each person interested" fourteen days before the date of the hearing. The only proof of service is by affidavit of an attorney for the ancillary executor, to the effect that he caused the publication to be made as directed, "and by mailing post-paid a copy thereof to each and every one of the persons interested in said estate." This affidavit states conclusions,—not facts,—and we hold its recitals, and the recitals of the order of the court based upon it, do not show notice to or service upon any or all of the defendants in error. Executor Ridgely appeared in said probate court and asked to have the ancillary net estate turned over to him for distribution under the laws of Illinois, but his appearance for that purpose, or perhaps for any other purpose, in the courts of a foreign State would not bind the distributees of the estate who were not otherwise having their day in court. (*Judy* v. *Kelley,* 11 Ill. 211.) Further, the probate court of Hampshire county cannot execute its statutory powers of general jurisdiction unless those powers be invoked by proper proceedings. The distinction between probate courts proceeding as such, and the same courts when exercising their statutory jurisdiction in equity, is a broad one and is carefully preserved. (*Bennett* v. *Kimball,* 175 Mass. 199; *Green* v. *Gaskill,* 175 id. 265; *Sherman* v. *American Congregational Ass'n,* 113 Fed. Rep. 609.) While it is true the probate court necessarily construed the will and determined the effect of the predecease of Loomis upon the right of succession to the personal property of Mrs. Lee, we think it clear from the record and other proofs it did so in the exercise of its probate jurisdiction, without any such special and formal pleadings and proceedings, with parties plaintiff and defendant and notice duly shown, as would have appeared had the equity jurisdiction been invoked for purposes more far-reaching than the mere protection of the ancillary ex-

ecutor by an order of distribution. The construction of a will under such circumstances and for such purposes does not affect controversies among adverse claimants to .the estate. *Anderson* v. *Anderson,* 69 Neb. 565; *Youngston* v. *Bond,* 69 id. 356.

Each side contends the proceedings in the probate court were *in rem.* This is correct, and under the authority of *Smith* v. *Smith,* 174 Ill. 52, it would seem none of the claimants are estopped from contending here for a different basis of distribution from the one there adopted, and the question of jurisdiction of the person may be inquired into and the recitals of the order contradicted as to jurisdictional facts. *Bank* v. *Wiley,* 195 U. S. 257; *Field* v. *Field,* 215 Ill. 496.

We conclude the probate court did not have jurisdiction of the persons of the defendants in error and was not in the exercise of its general equity jurisdiction. Therefore its order of distribution is not *res judicata* and does not in any degree embarrass the proceedings instituted in the circuit court of Menard county.

The more important question is, of course, what is the effect upon the estate of the lapsing of the Calvin S. Loomis legacies? The will, in contemplation of law, is in effect at the instant of the death of the testator and is to be considered as if it bore date then. Therefore in construing this will, which took effect six months after the death of the said Loomis, it is to be understood that the testatrix contemplated the fact of his death and that he left no living descendants; also that she had in contemplation the established rule of law in Illinois that the portion of the personal estate bequeathed to him either by the third or by the fifth clause of the will could not go to him or his lineal descendants, and, consequently, would descend as intestate estate to her general collateral heirs. While. it is ever the purpose of the courts to so construe a will as to give effect to its every word and phrase according to

the intention of the testator, yet such intention must be gathered not alone from the words employed but also from the situation and surroundings of the testator, including his relationship to the members of his family and the objects of his bounty. It was, then, apparently the purpose of the testatrix to leave this portion of her estate for distribution as intestate estate according to the Illinois Statute of Descent, but whether so or not, that result followed from her failure to alter her will after the death of said Loomis. The rule in such case is stated in Schouler on Wills, (3d ed. sec. 519,) as follows: "Where legacies are given to several legatees and the residue is bequeathed to the same legatees, it follows that the residue will not include a lapsed legacy to one of them. To hold, in such case, that the testator intended the lapsed legacy to fall into the residuum was said in *Craighead* v. *Givens,* 10 S. & R. 351, to hold that the testator intended to bequeath to one who died, a portion of the residue happening in consequence of his own death,—a consequence which could never be supposed." *Crawford* v. *Cemetery Ass'n,* 218 Ill. 399; *Dorsey* v. *Dodson,* 203 id. 32.

We are asked, in effect, to ignore or change the established rule of property and of construction of wills in this estate for many reasons, among which is the testatrix's use of the words "and any lapsed legacies," and the words "or, in case of his death, to his descendants," in the fifth clause or paragraph of the will. We are in accord with defendants in error and with the trial and Appellate Courts in the view that these words add nothing to the will, and the rule of construction is not affected by the use of either phrase. Where a specific legatee, who is also a residuary legatee, dies before the death of the testator his lapsed specific legacy will not fall into the residue but will descend to the heirs of the testator as intestate property, this being an exception to the more general rule that when a legacy lapses and there is a general residuary clause the

lapsed legacy will sink into the residuum. The general rule has application where there is a failure of a particular intent to give a legacy to a specific person and the court gives effect to the general intent manifested by the residuary clause, presuming the testator prefers the residuary legatee over everyone but the specific legatee. But where by the will specific legacies are given to several and by the residuary clause the residuum is given to the same persons, the general rule has no application because the reason for it fails. The case now under consideration falls within the rule which forms the exception to the general rule, and the Appellate Court properly held the lapsed Loomis legacy to be intestate estate. (*Crawford* v. *Cemetery Ass'n, supra; Dorsey* v. *Dodson, supra.*) The Appellate Court was also correct in holding the place for final accounting and settlement is in the forum of the principal, or original, administration. *Bedell* v. *Clark,* 137 N. W. Rep. 627; *Young* v. *Wittenmyre,* 123 Ill. 303.

The judgment of the Appellate Court is therefore affirmed.

*Judgment affirmed.*