(No. 23424.—

WILLIAM STRAUSS *et al.* Appellants, *vs.* SIDNEY STRAUSS *et al.*—(ALBERT STRAUSS, Appellee.)

*Opinion filed April 24, 1936—Rehearing denied June 4, 1936.*

Farthing, J., dissenting.

Greenebaum & Burns, and George C. Weaver, for appellants.

Brown, Hay & Stephens, (Logan Hay, Charles G. Briggle, Jr., Leigh M. Kagy, and Albert C. Schlipf, of counsel,) for appellee.

Mr. Justice Orr delivered the opinion of the court:

The construction of the will of Isaac Strauss, deceased, by the circuit court of Pike county, is the subject matter of this direct appeal. The suit below was brought in behalf of Albert Strauss, one of the sons of the testator, who claimed, and the lower court so held, that by reason of the death of one of his brothers, E. J. Strauss, prior to the testator's death, the bequests to E. J. under the will lapsed and became intestate property, in which Albert was entitled to share. ·

Isaac Strauss, a wealthy and aged merchant of Pittsfield, died in 1928, leaving a lengthy will drawn by him in January, 1916, together with three codicils executed

subsequently in 1916, 1917 and 1922. At the time his will was executed, his wife, Eliza, and eight children were living. There were then five sons, E. J., William, Benjamin, Henry and Albert, and three daughters, Ida Lindauer, Sarah Brucker and Helen Greenebaum, and no children or descendants of any deceased child or children. His wife, Eliza, died in 1916, and one son, E. J., died without issue in 1922, and it is the disposition of the share of the estate given by the will to this deceased son which has given rise to the present controversy. The will and three codicils were duly admitted to probate and record in the county court of Pike county.

The first clause of the will provided for the payment of debts and funeral expenses. The second clause gave $75,000 to the testator's son Albert, stating, "which is in full of all I intend to give him from my estate." The third, fourth and fifth clauses pertained to his wife, giving her the home property, $50,000 outright, and creating a $200,000 trust fund for her during her lifetime, with a further provision that after her death the trust fund should be distributed "equally among my children who shall then (at the death of my said wife) be living, and in the case of the death of any of said children, then to my children who shall then (at the death of my said wife) be surviving, excluding from such distribution of said trust fund, my son, Albert Strauss, for whom I have already made provision in this will, which provision is intended to be in full of his share in my estate." The sixth clause created a trust fund for his daughter Ida Lindauer, and provided that at her death "the remainder of said trust fund created for her benefit shall be divided equally among my children who shall be living at the time of the death of the said Ida Lindauer, in equal parts." This quoted provision was corrected by the testator in his first codicil to conform to the other provisions aimed to prevent Albert from taking any share in the estate except the income from the

$75,000 trust fund. The seventh clause gave to E. J. Strauss and William Strauss $2200 each. The eighth clause pertained to the continuance, for five years after his death, of the mercantile partnership between himself and his brother Jacob, which had begun in the year 1865, and stated that the written articles of partnership previously entered into "are hereby confirmed and ratified and adopted as a part of this my last will and testament," to be carried out as fully "as if said articles of co-partnership were fully set out in this will." The ninth clause, and the one under which the chief controversy arises, is as follows: "All the rest, residue and remainder of my property whether real, personal or mixed, after the payment of the legacies and bequests hereinbefore set out, I give, devise and bequeath in equal parts to my following named children, to-wit: E. J. Strauss, William Strauss, Benjamin Strauss, Henry Strauss, Helen Greenebaum, Sarah Brucker and Ida Lindauer, that portion going to the said Ida Lindauer, to go to E. J. Strauss and William Strauss as trustees, or their successor or successors in trust, in accordance with clause 6 of this will. In the event that any of the above named children should die before my death or after my death, and before final distribution has been made of my estate, leaving any child or children, then such child or children shall receive its or their parent's share." The tenth and eleventh clauses provide, respectively, for the appointment of trustees and testamentary guardians for any minor child or children referred to in the ninth clause. The twelfth clause states "that the testator has endeavored to deal fairly and equally with his wife and children," and the thirteenth and final clause appointed E. J. and William Strauss as executors, and provided, in case of death, for their successors. The last two codicils of 1917 and 1922 are not material to the present inquiry.

After the death of his wife, Eliza, in 1916, the first codicil to the will was executed. By its second clause the

testator gave all the property previously bequeathed and devised to his wife and mentioned in the third, fourth and fifth clauses of his will, "to the parties named in the ninth clause of said will, and to be distributed and divided in accordance with the ninth clause of said will." By the third clause of this codicil the testator rescinded his absolute gift of $75,000 to his son Albert, and provided in its stead that this $75,000 should be held in trust for Albert during his lifetime, with frequent payments to him of the net income thereon, and at the death of Albert the principal of this fund to be distributed "in accordance with the scheme outlined in clause 9 of my will, being the residuary clause thereof." The testator then further recited: "The foregoing trust fund which I have created for the benefit of my said son, Albert Strauss, shall be and is in full of all claim of any kind or character which he is to have out of my estate." The next clause in this codicil relates to the sixth clause of the will, pertaining to Ida Lindauer's trust fund and the manner of its division among his children living at the time of her death. It provides: "Now, that there may be no uncertainty as to my intentions in view of said will and this codicil thereto, I hereby declare that my son, Albert Strauss, shall not participate in the distribution of said trust fund created for my said daughter, Ida Lindauer, in the event of her death, and I hereby expressly declare that my son, Albert, shall have no other or further interest in my said estate or any part thereof, except as provided and given him in this codicil."

The partnership agreement between the testator and his brother Jacob, referred to in the eighth clause of the will, was executed in writing in 1903, and in part provided that Albert Strauss should not share in the property of his father except as provided by the will to be thereafter drawn. In this respect he was treated differently from his brothers, as all the other sons of both partners were declared eligible to take part in the conduct of their

partnership business or to become trustees, so long as a son of either partner should live.

The specific question at issue is whether the legacy of $2200 given by clause 7 in the will to E. J. Strauss, and his one-seventh interest in the residuum of the estate under clause 9, passed as testate or intestate property. All the heirs, legatees and devisees of the testator, excepting Albert Strauss, contend that the $2200 legacy became a part of the residuum mentioned in clause 9, and that when E. J. Strauss died his interest vested in the six survivors named therein as a class, to the exclusion of Albert. The position taken by Albert, however, is, that this $2200 legacy did not became part of the residuum but became intestate property under section 11 of the Statute of Descent, and that the bequest of the residue in clause 9 to the seven children therein named, whether made to them as a class or as individuals, fell within the meaning of section 11 and thus became intestate property.

There are many well known rules applicable here which are universally applied by the courts in construing wills—rules so often applied as to require no further citations of authority. For instance, the presumption always obtains that the testator intended not to die intestate as to any of his property, and that if a provision is fairly open to the construction of either testacy or intestacy the former must be adopted. Other well known doctrines are, that the presence of a residuary clause strengthens the presumption against partial intestacy; that in determining the meaning of particular parts the whole will must be considered and every provision given due weight; that substance rather than form must be regarded, and that no part shall be regarded as meaningless if it can be harmonized with other parts of the will to produce a reasonable result. But far and beyond all other rules in cardinal importance, and, in fact, the chief reason for their existence, is the one fundamental rule of construction that the chief object and pur-

pose of a court in construing a will is to ascertain and give effect to the true intention of the testator. Clause 9, the residuary clause of this will, is here the principal object of construction. By that clause, as above noted, the testator gave and devised "in equal parts to my following named children" (naming all of them except Albert) the residuum of his estate. No words of survivorship were included except as to any of such seven named children who might die leaving a child or children, in which case such child or children should receive its or their parents' share. In accordance with well settled rules, this residuary clause cannot be construed standing alone but must be read and understood in connection with other parts of the will and codicils, and with the facts and circumstances surrounding the making of the will, in order to arrive at the true intent of the testator.

A reference by the testator in the fifth clause to the distribution of the remainder of the $200,000 trust fund bequeathed to his wife shows his expressed desire for an equal distribution "among my children who shall then be surviving, excluding from such distribution of said trust fund my son, Albert Strauss." The significance of this grouping of all his surviving children except Albert into one class must not be overlooked in construing the ninth clause. It may also be fairly inferred from the ninth, tenth and eleventh clauses of the will that the testator believed that the shares of any of his children who might die without issue would go into the residuum of his estate, because in all three of these clauses he made specific provision for the opposite contingency. Thus, under clause 9 he provided for the contingency of death of any of his children leaving issue, and in clauses 10 and 11 made provision for the appointment of testamentary trustees and guardians in the event any of the seven children named in the ninth clause died leaving any minor child or children. The care and particularity exercised by the testator in preventing

the shares of his prospective grandchildren from passing into the general residuum for division among his surviving children shows that he must have believed and intended that the share of any child, such as his son E. J., who died without issue prior to his own death, would, unless he made such provision, pass into the residuary fund for the common benefit of all the survivors designated therein, as provided in the fifth clause. The language used by the testator for these purposes in the fifth, ninth, tenth and eleventh clauses, respectively, referred to "my children who shall then be surviving," "my following named children," "my said children," or "my children who are named in the ninth clause of my will," as a class or group, exclusive of Albert, whom he had set apart for uniform treatment. And it is evident from the whole will that he named these seven children in the ninth clause only to make more certain that Albert Strauss would be excluded from receiving any portion of his residuary estate. In fact, his desire in this latter respect was expressed in so many places throughout the will and first codicil that there cannot be any reasonable doubt of his intention.

The different paragraphs and clauses of a will must all be examined to gain the testamentary idea as a whole, to determine the beneficiaries within a class, the disposition of the property not expressly disposed of, and the proper construction of a paragraph disposing of the residuary estate. (69 Corpus Juris, 104-109.) It is the general rule to so construe a residuary clause as to prevent the intestacy of any part of the testator's estate unless there is an apparent intention to the contrary. (*Levings* v. *Wood,* 339 Ill. 11; *Dunn* v. *Kearney,* 288 id. 49.) Where an intention to disinherit an heir is expressed clearly and manifestly in a will, so as to leave no reason for doubt, a construction of the will which would leave the testator intestate as to any portion of the property will not be adopted to defeat that intention and thus allow the heir to have

some share in the estate. (*Willis* v. *Watson*, 4 Scam. 64.) The intention of the testator in this case to exclude his son Albert from any portion of his estate except the income from a $75,000 trust fund for life was clearly and persistently expressed throughout the will and codicils by the testator. His last expression on this subject in the first codicil was: "I hereby expressly declare that my son Albert shall have no other or further interest in my estate or any part thereof except as provided and given him in this codicil." This last expression alone would have been sufficient even without numerous other expressions to the same effect throughout the will, all treating Albert's bequest separately from provisions made for the other seven children. It is not necessary for a testator, in order to insure the result he desires, to state his intention to restrict one of his children to a certain interest in his estate in every paragraph or clause of his will. The statement last quoted from the first codicil is as binding upon the court as if it had been attached to and made part of the ninth or residuary clause of the will itself. With such an unambiguous clause in the codicil, re-inforced by repeated expressions of like import in the will and articles of partnership, any construction that would permit Albert to receive any further share of his father's property would be absurd, in that it would defeat a clearly expressed intention to the contrary.

The will in question definitely placed Albert in a preferred class by himself and treated the property set apart to him in the second clause of the will, placed in sequence even ahead of the testator's wife, as a distinct and definite legacy of a fixed amount. The other seven children were all treated as a separate class, with common and equal interests, and were to take whatever remained after the debts were paid, Albert's trust fund created and their mother provided for. The shares given to these seven remaining children were not in any fixed amounts but were intended to be equal and subject to equal diminishment or increase

by the same general conditions or contingencies. No technical rules of construction can be invoked to defeat a well-expressed testamentary plan of this character. When the will is considered as a whole, as it must be, the general treatment by the testator of his remaining seven children as a class is such as will prevent partial intestacy and the consequent operation of the statutes of descent. While we recognize the general rule that a gift to persons named is a gift to them individually and not as a class, yet reasons are here found in the language and structure of the will for deciding that the intent of the testator, which is, of course, paramount to the rule, would be best subserved by disregarding it. As was stated in *Stedman* v. *Priest,* 103 Mass. 293: "Although it is a rule that, when an aggregate fund is given to several to be divided among them, *nominatim,* in equal shares, if one of them dies before the testator, his share will lapse, yet the mere fact that he mentions by name the individuals who make up the class is not conclusive, and if the intention to give a right of survivorship is collected from the remaining provisions, applied to the existing facts, such intention must prevail." The inference which would otherwise be drawn by naming the children must in this case yield to the clearly expressed intent of the testator. (*Schaffer* v. *Kettell,* 14 Allen, (Mass.) 528; *Stedman* v. *Priest, supra; Springer* v. *Congleton,* 30 Ga. 976; *Warner's Appeal,* 39 Conn. 253; *Talcott* v. *Talcott,* id. 186.) The contention by appellee that section 11 of the Statute of Descent applies even if clause 9 of the will be construed as a gift to a class, is also disposed of in view of our holding that the will, construed as a whole, left no intestate possibilities through which Albert Strauss could take any additional money by operation of law.

It is therefore our judgment that Albert Strauss is limited by the will and codicil of his father to a life income from the $75,000 trust fund and takes no other share or interest in his father's estate. This construction is in keep-

ing with the expressed intention of the testator, does no violence to any rule of law, and confirms what the testator deemed and stated to be a just and equitable division of his property among his children. The specific legacy of $2200 given to E. J. Strauss falls as a lapsed legacy into the general residuary fund and passes by the residuary clause rather than as intestate property.

It was correctly held in the court below that the inheritance tax assessment did not amount to an adjudication of the rights of Albert Strauss and that he was not estopped thereby to claim a greater interest in the estate. It was also correctly found that the evidence was not sufficient to warrant the conclusion that there was any settlement between the testator in his lifetime and his son Albert whereby the latter's expectancy was relinquished and released. In holding, however, that the $2200 legacy to E. J. Strauss and his one-seventh interest under the residuum clause passed as intestate property to testator's heirs, and that Albert Strauss was entitled to a one-seventh part thereof because the bequests of the residuary estate were not to a class, the circuit court erred.

The judgment is therefore affirmed in part and reversed in part, with instructions to the chancellor to enter a decree in conformity with this opinion.

*Affirmed in part, reversed in part and remanded, with directions.*

Mr. JUSTICE FARTHING, dissenting:

I cannot agree with the result reached in this case. There are no words of survivorship which would show that the testator had the intent to make the residuary legatees a class within that term's legal meaning, and while the will shows a definite intention that Albert Strauss was not to receive more than the amount named, it does not disclose a provision to meet the contingency that arose when the son E. J. Strauss died. The law has been that a court will

not attempt to supply a provision to complete a will or to meet a contingency not provided against by a testator, and that where the intention of the testator is against some positive rule of law the intention must fail.

Where a specific legatee is also a residuary legatee and dies before the death of the testator the lapsed specific legacy does not fall into the residue but descends to the heirs as intestate property and the general rule as to lapsed legacies does not apply. (*Dickinson* v. *Belden,* 268 Ill. 105.) Neither will a construction be adopted that would make the will contravene well-settled rules of law. The construction contained in the majority opinion does, in my judgment, contravene the rule stated. In *Tea* v. *Millen,* 257 Ill. 624, speaking through Mr. Justice Cartwright, we said: "It has been settled by several decisions of this court that heirs cannot be disinherited merely by a declaration that they shall not have anything or no more than a certain sum. No matter how strong the intention of the testator may be to disinherit an heir, the intention cannot be given any effect as to intestate property, and the only method of disinheriting him is to give the property to someone else.— *Lawrence* v. *Smith,* 163 Ill. 149; *Parsons* v. *Millar,* 189 id. 107; *Ames* v. *Holmes,* 190 id. 561."

The presumption that a testator did not intend to die intestate as to any of his property does not authorize a court to supply an omitted provision where there is nothing in the will itself to show the intention of the testator as to what disposition he would have made had the omission been called to his attention. (*Pontius* v. *Conrad,* 317 Ill. 241; *Hampton* v. *Dill,* 354 id. 415; *Foss* v. *State Bank and Trust Co.* 343 id. 94.) It must be remembered that here the testator did not change his will, although he had the opportunity to do so, after his son E. J. Strauss died.