In the Matter of the Estate of Jay Samuel Hartt, Deceased.

Sylvia Mona Hartt, Petitioner-Appellant, v. Harris Trust and Savings Bank, Executor of the Last Will and Testament of Jay Samuel Hartt, Deceased; Jane Hartt and Michigan State University, Respondents-Appellees.

Gen. No. 50,284.

First District, Fourth Division.

September 22, 1967.

146

Springer & Hansen, of Chicago, for appellant.

John H. Thomson, of Vedder, Price, Kaufman & Kammholz, and Lennon, King & Denniston, of Chicago, for appellees.

MR. PRESIDING JUSTICE ENGLISH delivered the opinion of the court.

From a judgment denying her petition for distribution of $8,000 or more, which she alleges is intestate property from the estate of Jay Samuel Hartt, plaintiff appeals, contending that since decedent's will contained no provisions directing or authorizing the accumulation of unexpended or undistributed property and because his widow renounced her share, plaintiff, as sole remaining heir-at-law, is entitled to the intestate property.

On April 13, 1962, Jay Samuel Hartt died testate, leaving as his sole heirs-at-law his widow, Phyllis Ann Hartt, and his sister, plaintiff, Sylvia Mona Hartt. The will was admitted to probate on June 1, 1962, and the defendant, Harris Trust and Savings Bank, was appointed executor and cotrustee. Decedent's widow filed her renunciation of the will on November 28, 1962, and plaintiff filed her petition for distribution on August 13, 1964.

The defendant contends, as at trial, that the will does authorize accumulation of income not required or, in the trustee's discretion, permitted to be distributed, and that, therefore, the remaining sum of money should pass through the residuary clause of the will to Michigan State University, the named beneficiary thereof.[1]

After other provisions not here relevant, the will of decedent created two trusts, the first of which, Trust "A," was for the benefit of his wife. All the income of Trust "A" was to be paid directly to the wife, and the Trustees were authorized to invade the principal if, in their discretion, it became necessary to provide adequate-

---

[1] Michigan State University is also a party to this appeal as a respondent-appellee seeking affirmance of the judgment.

148

ly for the widow's continued comfort and needs. At her death, the trust was subject to her testamentary power of appointment. Failing a valid exercise of this power, the entire remaining principal was to be added to and become a part of Trust "B," subject to and administered as per the directions applicable to that trust. In case the wife predeceased the testator, or if Trust "B" had terminated, the principal was to pass through Paragraph 7 to Michigan State University, the named beneficiary. This appeal presents no question specifically applicable to Trust "A." The question concerns Trust "B" insofar as income not distributed thereunder has accumulated.

Testator created Trust "B" in Paragraph 6 of his will to provide annual payments to one Jane Dempsey and to plaintiff of:

> ". . . so much of the *income and principal* of Trust
> 'B': as shall be necessary in the uncontrolled opinion of the Trustees . . . to provide for her comfortable support maintenance and welfare, . . . ." (Emphasis supplied.)

In subparagraph (c) of Paragraph 6, testator limited the amounts payable to plaintiff and Jane Dempsey:

> "(c) Payments . . . shall not exceed . . . $7200
> a year . . . taking into consideration all other income of which the Trustees have knowledge which is available to either of said persons. The Trustees are also authorized to pay, over and above the limitation . . . such additional amounts as may be required, in the uncontrolled discretion of the Trustees, . . . to pay unusual or extraordinary expenses
> . . . ."

Testator further provided:

> "(d) If at any time Trust 'A' shall have been
> exhausted in the support of my wife, . . . then my

Trustees shall use so much of the income from and principal of Trust 'B' (limited to $4,000 per year) as may be necessary . . . and . . . without endangering further payments to Jane Dempsey, or my sister, . . . under subparagraphs (a) and (b) above . . . ."

In Paragraph 7(b), testator willed that:

". . . when the Trustees have discharged all obligations of Trust 'A' and Trust 'B', said Trustees shall pay over to Michigan State University . . . the remaining *principal and income of Trust 'B'* and the *principal of Trust 'A'* which has not otherwise been disposed of through the valid exercise of the power or appointment granted to my wife . . . ." (Emphasis supplied.)

Plaintiff argues that courts must consider the language used in a will when construing it in order to ascertain the intention of the testator; that a court cannot properly guess as to what the testator may have wished to provide where the language used does not permit accumulation of undistributed income; that such an authorization must be express where income exceeds the requirements of trust payments; that here the language not only does not authorize accumulation, but actually indicates that testator did not intend accumulation of income since he directed the Trustees to make payments of "income and principal"; and, finally, that where there is no provision for the disposition of excess income and no provision for its accumulation, it will pass as intestate property.

Defendant agrees that the prime duty of the construing court is to ascertain and give force to the intentions of the testator as found in the will, so long as such intent is valid; that where, as here, the testator disposes of his estate by will, there arises a presumption that he did not intend any partial intestacy and that courts will adopt any reasonable construction to avoid partial in-

testacy, since the presumption will be rebutted only where the contrary interpretation clearly appears; that a residuary clause in a will also raises the presumption that testator intended the designated beneficiary to take, rather than unspecified heirs who would take under intestacy statutes; that testator's authorization for accumulation can be implied from the stated terms of the will as well as the general scheme of distribution and consideration of the entire will, and that there needn't be a specific expression of such authorization; and that, therefore, no intestacy exists as to the undistributed income in this case.

██ The authorities advanced by all parties to this appeal raise no unsettled questions of Illinois law and present no difficulty or disagreement insofar as they pertain to the proposition that the primary duty of a court is to ascertain the intent of the testator in a legally valid will. It is likewise true that the court must not engage in conjecture in its construction, since the intention to be carried out must be found on the face of the will, and, further, if there are contingencies for which the testator did not provide, either through faulty draftsmanship or oversight, the court will not supply remedial provisions.[2] Nevertheless, the court will look to the entire will and not construe intent merely from isolated and noncontextual language where to do so would violate the overall expressed intent.[3] Therefore, the essence of this appeal is whether the testator expressly authorized

[2] Hampton v. Dill, 354 Ill 415, 188 NE 419; Glaser v. Chicago Title & Trust Co., 393 Ill 447, 66 NE2d 410; LaSalle Nat. Bank v. MacDonald, 2 Ill2d 581, 119 NE2d 266; Whitmore v. Starks, 17 Ill 2d 202, 161 NE2d 254; Hart v. Hart, 316 Ill App 89, 43 NE2d 853.

[3] Halderman v. Halderman, 342 Ill 550, 556, 11 NE 526; Strauss v. Strauss, 363 Ill 442, 447, 448, 2 NE2d 699; Scott v. Crumbaugh, 383 Ill 144, 147, 48 NE2d 532; Golstein v. Handley, 390 Ill 118, 121, 60 NE2d 851; Hayden v. McNamee, 392 Ill 99, 105, 63 NE2d 876.

the Trustees to accumulate income which the will did not require, or permit them to distribute. If the authorization to accumulate is not found, then the contested sum would pass as intestate property and the judgment must be reversed. (Ill Rev Stats 1963, c 3, §§ 11, 16, 51.)

We find from the language creating the trust and the general scheme of distribution, as evident in consideration of the entire will, that testator intended the Trustees to have power to accumulate the excess income in Trust "B." In subsections (c) and (d) of Paragraph 6 (quoted above), testator set limitations on the annual payments to each beneficiary of $7,200, but directed the Trustees to augment those allowances if they deemed it necessary. Therefore, the amounts payable to these beneficiaries were flexible up to and even in excess of $7,200. In the Trustees' discretion, payments could be made from either income or principal, and the guide was to be the needs of the individual beneficiaries, with consideration given to other income and an assessment of the standard of living in each case. There was no direction for the Trustees to pay first from income of the trust and invade principal only when necessary, nor was there any mention of the estate's earning capabilities as an indication of the size of the payments or limitation thereon. Therefore, it seems clear to us that the testator contemplated use of income and principal as a common fund, with no distinction between the two for this purpose.

This question was considered in Hartford Nat. Bank & Trust Co. v. Yearly Meeting, 137 Conn 648, 81 A2d 104, 107 (1951), wherein the Supreme Court of Errors noted that testator had provided for annual payments from either income or principal, and held:

> "It is apparent that the testator contemplated the possibility that in some years the income might shrink to such an extent that it would be necessary to use principal to pay the annuities. He, however,

made no provision for the recoupment of the principal out of surplus income in other years, as would have been natural if his intent had been to keep the income and the principal as two separate funds. The language employed evidences the testator's intent to create a 'trust fund' comprised of income as well as principal."

In further evident disregard of any need for the Trustees to distinguish between income and principal, the testator provided in 6(d) that income and principal up to $4,000 per year should be used if necessary to supplement payments being made under Trust "A," so long as it would not endanger payments directed under Trust "B." This shows not only a desire for the Trustees to treat income and principal as a common fund, but also that testator contemplated that the amounts available in Trust "B" would vary, depending on trust earnings and particularly because payments made to the two beneficiaries would depend upon consideration of outside income available in each case. It would therefore not be reasonable to construe the will as overlooking the possibility that income might accrue and be undistributed in any given year, since testator provided for a common fund of income and principal, and directed that the specified payments should vary from year to year, depending on external factors of income and standard of living peculiar to each beneficiary, and discretionary judgments of the Trustees. Since these flexible amounts were to be paid from income and principal of Trust "B," as a common fund, the reasonable construction is that excess earnings, if they occurred, were to be conserved as part of that trust fund for use in future years if and when needed.

■■ The legal effect of such a common fund was also considered in the Yearly Meeting case and is applicable here:

153

"Where a testator establishes a fund, the income from which is to be used for certain purposes, but that income is in excess of the amount required for those purposes, the question whether the excess shall accumulate and be added to the principal or shall be otherwise disposed of depends primarily upon the intent of the testator." [Citation.] . . . however, even though the will contains no expression of an intent that the excess income shall be accumulated, such course must be followed where the disposition of the excess as it accrues would be contrary to the scheme of the testator as disclosed in the will. Accordingly, *the absence of an accumulation provision is only one of several indications of the testator's intention and in view of the character and contents of the will, may be one by no means as significant as those of a contrary import.* [Citation.] *In short, a will may be effective to require the accumulation of excess income either by reason of its express terms or by implication from its general scheme of disposition.*" [Citation.] [81 A2d at 106–107.] (Emphasis supplied.)

■■ Plaintiff, however, argues that in Illinois there must be an express direction to accumulate income in order to satisfy the "Income and Principal Act" (Ill Rev Stats 1963, c 30, § 161(3)) which requires direction "by the terms of the transaction by which the principal was established," as a condition to the accumulation of income. Nevertheless, such a direction may be found to exist in a will irrespective of the absence of an isolated, specific phrase. We emphasize that we have no intention of supplying a provision that the testator may have overlooked, or that we feel he may have wanted. Instead, we find an express, though not specific, direction to accumulate from the language of the will which created the trusts and which controls the manner of distribution.

154

Further, in section II, Paragraph 3, the testator provided that: "My said Trustees shall have power to hold or to retain any property coming into their possession . . . ." In Halderman v. Halderman, 342 Ill 550, 555–556, 11 NE 526, the court considered the question of whether after-acquired property should pass intestate or under a will which gave "my entire real and personal property wherever found," then listed the real estate owned at the time the will was executed. Even though the testator conveyed away some of the described realty and subsequently acquired other real estate not described in the will, the court found no intestacy. Noting that both statute and decisional law required that "an intention of the testator to dispose of after-acquired property must affirmatively appear from the will," the court then reasoned:

> "The word 'affirmatively,' . . . means merely that the will must show an intention on the part of the testator that such after-acquired property as well as his other property shall pass by the will. This rule is satisfied by the intention appearing from the language used that all property owned by him at the time of his death shall pass by the will, and it is not necessary to use different language showing a specific intention . . . . The intention must be gathered from the language of the entire will and considered as a whole."

Just as "affirmatively" may be found from the language of the entire will, so may a specific direction to accumulate income be expressed by the general scheme and language of the will.

██ Our conclusion finds further support in the familiar presumption against a partial intestacy, as stated in Caracci v. Lillard, 7 Ill2d 382, 386, 130 NE2d 514:

> "Thus it is presumed the testatrix intended to dispose of her entire estate unless it clearly appears other-

wise by the provisions of the will; and any reasonable construction, consistent with the terms of the instruments will be adopted so as to find a disposition of the entire estate rather than an intention to die testate as to one portion of her property and intestate as to another . . . . The intention of the testatrix must be sought in the general tenor of the instrument; and the scheme of disposition so disclosed must control, even though it involves the rejection of words in the will which are irreconcilable or inconsistent with the general context."

See also First Nat. Bank of Chicago v. Piaget, 2 Ill App2d 207, 222, 119 NE2d 457; Wise v. First Nat. Bank of Greenville, 10 Ill2d 623, 627–628, 141 NE2d 1; Schroeder v. Benz, 9 Ill2d 589, 595, 138 NE2d 496; Halderman v. Halderman, 342 Ill 550, 11 NE 526.

■ Therefore, the presumption against partial intestacy, and the intended general scheme of distribution as found in express language of the will, are sufficient to support a finding that accumulation of income was authorized and that there was no intestacy as to undistributed income.

■ Even were we to accept, arguendo, the proposition that no implication of a direction to accumulate income may properly control in Illinois, whether or not based on express language, the presence of a residuary clause and a named beneficiary thereof raises a further presumption. The direction to the Trustees in Paragraph 7(b), to "pay over to Michigan State . . . the remaining principal and income of Trust 'B' and the principal of Trust 'A'" constituted a specific, express direction to accumulate undistributed income for the residuary beneficiary, and it is therefore presumed that the testator intended that beneficiary to take, rather than unspecified intestate beneficiaries. Schroeder v. Benz, 9 Ill2d 589, 593, 138 NE2d

496; Cahill v. Michael, 381 Ill 395, 405, 45 NE2d 657; Strauss v. Strauss, 363 Ill 442, 449, 2 NE2d 699.

■ Plaintiff has cited many authorities which we feel are distinguishable as not directly applicable to the legal or construction problems of this particular will. Our situation in being called upon to construe a will was discussed in First Nat. Bank of Chicago v. Piaget, 2 Ill App 2d 207, 216–217, 119 NE2d 457:

> "We have not undertaken to distinguish the other cases cited by the . . . defendants. We have examined them and do not think they support their position. Comfort can always be found in the general language used by courts in the multitude of opinions written in will cases. Cases involving the construction of wills do not have the controlling force of precedent as in other cases. Cahill v. Michael, 381 Ill 395, 45 NE2d 657; Sloan v. Beatty, 1 Ill2d 581, 590, 116 NE2d 375. It is recognized that wills are found in a great variety of forms and are executed under circumstances peculiar to each individual case. Walker v. Walker, 283 Ill 11, 118 NE 1014; Smith v. Garber, 286 Ill 67, 121 NE 173."

See also Halderman v. Halderman, 342 Ill 550, 556, 11 NE 526; and Glaser v. Chicago Title & Trust Co., 393 Ill 447, 456, 66 NE2d 410.

The judgment of the Circuit Court is affirmed.

Affirmed.

DRUCKER and McCORMICK, JJ., concur.